FRANK and another, Appellants, vs. KLUCHESKY and others, Respondents.

*March 12—April 15, 1941.*

512

For the appellants there was a brief by *Mount & Zander* of Milwaukee, and oral argument by *H. L. Mount.*

For the respondents there was a brief by *O. L. O'Boyle,* corporation counsel of Milwaukee county, *Robert P. Russell,* assistant corporation counsel, *Walter J. Mattison,* city at-

torney of Milwaukee, and *Leo B. Hanley,* assistant city attorney, and oral argument by *Mr. Russell* and *Mr. Hanley.*

ROSENBERRY, C. J.   The defendants state the issue as follows:

"1. Does Wis. Stats. 1939, section 66.05 (10) discriminate unconstitutionally in favor of wholesalers of beer, and in favor of Class 'B' licensees or taverns, against Class 'A' licensees, such as grocers and druggists, in preventing the latter from selling refrigerated beer?
"2. Is the statutory prohibition of the sale of refrigerated beer by Class 'A' licensees, such as grocers and druggists, a valid exercise of the police power?
"3. Is the word "unrefrigerated" in section 66.05 (10) (f) so vague and indefinite as to fail of constitutionality?"

We shall first consider the plaintiff's contention that "unrefrigerated" is a term which is so vague, indefinite, and uncertain as to render the act invalid.

The offense is a misdemeanor, and in addition to other penalties the seller may lose his license. If convicted of two offenses the statute is mandatory in that respect. The offense therefore is a crime within the meaning of sec. 7, art. I, of the Wisconsin constitution, which provides:

"In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him. . . ." *State v. Slowe* (1939), 230 Wis. 406, 284 N. W. 4.

Under a similar provision of the United States constitution the supreme court of the United States held:

"That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common in-

telligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." *Connally v. General Construction Co.* (1925) 269 U. S. 385, 391, 46 Sup. Ct. 126, 70 L. Ed. 322.

See also *Lanzetta v. New Jersey* (1939), 306 U. S. 451, 59 Sup. Ct. 618, 83 L. Ed. 888. Following this case in 83 L. Ed., beginning on page 893, are a large number of illustrations as to when a statute defining a criminal offense is subject to attack as vague, indefinite, and uncertain.

See also *United States v. L. Cohen Grocery Co.* (1921) 255 U. S. 81, 41 Sup. Ct. 298, 65 L. Ed. 516.

This court followed the rule laid down in *Connally v. General Construction Co., supra,* in *State v. Arnold* (1935), 217 Wis. 340, 258 N. W. 843. It is not contended that the term "unrefrigerated" is without meaning, but on the contrary that it has a number of meanings, and for that reason it is impossible for a person to determine with certainty in which sense the legislature intended to use the term. It is a matter of common knowledge that all beer in the course of its manufacture and preparation for sale for purposes of consumption is artificially cooled, according to the allegations of the complaint, to a temperature of 40 degrees F. It also appears that unpasteurized beer cannot be preserved and kept in a condition fit for consumption for more than a short period of time unless it is kept at a temperature of 40 degrees F. or less. Beer is customarily delivered by the brewer to Class "A" licensees at a temperature of about 40 degrees F. It also appears that there are various and numerous methods, means and ways of cooling beer. Beer may be cooled by storing it in naturally cooled cellars, by storing it in unheated rooms in the winter months, by keeping it in tanks or containers through which cold water is allowed to run, by storing it in artificially cooled compartments, such as iceboxes, refrigerators and cabinets ; that beer may be cooled or refrigerated without the aid of any artificial contrivance or mechanical device, and it

is argued that for these reasons it might be claimed to be refrigerated when delivered, during about half of the year by reason of seasonal temperature and weather conditions.

On behalf of the defendants it is argued that the term "unrefrigerated" is not void for uncertainty, since a sensible meaning may be given to it in conformity with the ordinary canons of construction, citing *State v. Arnold, supra.*

In *State v. Arnold, supra,* p. 342, the court was called upon to construe a statute which provided that—

"the term 'indecent articles' means any drug, medicine, mixture, preparation, instrument, article or device of whatsoever nature used or intended or represented to be used to procure a miscarriage or prevent pregnancy."

In arriving at this conclusion the court said (p. 347) :

"Applied to this case, we conclude that the legislature did not have in mind an omnibus condemnation or regulation of every article capable of producing an abortion or preventing pregnancy; that it was the intent of the legislature to deal with articles whose sole purpose, or whose intended purpose or represented function was to produce these results ; and that, in general, it was the intention of the legislature wholly to prohibit the sale of such articles."

This is not a parallel case.

It seems from the allegations of the complaint and the language of the statute that what was intended in this case was to prevent the sale of potable beer by Class "A" retailers. Under such circumstances the purchasers would be required to take the beer away from the premises where purchased to some other place and there have it prepared for consumption. If that had been the legislative purpose it would have been very easy to say so. The trial court held that the section under consideration should be construed—

"to prohibit the sale of fermented malt beverages by Class 'A' licensees, unless said beverages are sold at or about the temperature of the premises of the licensee at the time and place of sale."

Whether beer would be "refrigerated" or not would depend upon the temperature of the premises where sold. "Unrefrigerated" would mean then that it might be sold at one temperature in one place and a different temperature in another place. In the prosecution the state would be obliged to prove the temperature of the place where it was sold. One dispenser selling beer having a temperature of 40 degrees F. would be within the law if his premises were of that temperature, whereas another dispenser selling beer of the same temperature might be guilty of an offense under the law if the temperature of his premises was 60 or 72 degrees F. The law might have been made certain by saying that Class "A" licensees should not sell beer having a temperature of less than 50 degrees F. or some temperature which makes it unpalatable. If it was the intent to forbid the sale of potable beer it was easy to say so and to say at what temperature it should be deemed potable.

It is further argued on behalf of the defendants that it was the legislative intention to prevent the sale of cold beer in groceries and drugstores, so as to eliminate the possibility of beer being consumed on the premises; "cold" for such purpose means cooler than the room in which sold.

"Thus, our definition of 'unrefrigerated,' evolved by consideration of the word itself, seems perfectly to suit the legislative intention."

In this connection reference is made to *Alton & S. R. R. v. United States* (N. D. Cal. 1931), 49 Fed. (2d) 414, where the court construed the meaning of the term "icing," as practiced by railroads. The court of course had no difficulty in defining that term. But this is not such a case. If refrigeration meant as customarily practiced, in say the packing-house business, a temperature of 20 degrees F. or some other specified temperature, the intent of the legislature could be ascertained with

reasonable certainty. It is argued that the act may be made certain by construction, but if the court picks one out of several possible constructions, each of which are equally tenable, then the court makes the law and not the legislature.

In *Lanzetta v. New Jersey, supra,* the court said (p. 453) :

"If on its face the challenged provision is repugnant to the due-process clause, specification of details of the offense intended to be charged would not serve to validate it. [Citing.] It is the statute, not the accusation under it, that prescribes the rule to govern conduct and warns against transgression."

In the same case the court made the further statement (pp. 456, 457) :

"Appellants were convicted before the opinion in *State v. Gaynor* [a state case construing the statute]. It would be hard to hold that, in advance of judicial utterance upon the subject, they were bound to understand the challenged provision according to the language later used by the court. . . .

"The descriptions and illustrations used by the court to indicate the meaning of 'gang' are not sufficient to constitute definition, inclusive or exclusive. The court's opinion was framed to apply the statute to the offenders and accusation in the case then under consideration; it does not purport to give any interpretation generally applicable."

In closing the court said (p. 458) :

"The challenged provision condemns no act or omission.; the terms it employs to indicate what it purports to denounce are so vague, indefinite and uncertain that it must be condemned as repugnant to the due-process clause of the Fourteenth amendment."

It is the statute which must, in order to afford due process, be definite and certain, not the opinion of the court.

While the case before us does not require us to fit the law to the case, we are asked to select one of a number of tenable constructions and make the law definite and certain by so

construing it. It is considered that this is not construction but legislation.

The term "unrefrigerated" is so indefinite and uncertain as to render sec. 66.05 (10) (f), Stats., invalid unless the term is severable.

Sec. 66.05 (10) (n) 2 provides:

"The several terms and provisions of this subsection shall be deemed severable, and if any provision of this subsection or the application thereof to any person or circumstances is held invalid, the remainder of the subsection and the application of such provisions to other persons or circumstances shall not be affected thereby."

Pursuant to the statute, and in accordance with established principles of constitutional law, it is considered that the term "unrefrigerated" is severable, and that the section with the term "unrefrigerated" eliminated leaves a workable provision consistent with the legislative intent.

The demurrers to the complaint should have been overruled.

*By the Court.*—The order appealed from is reversed, and cause remanded with directions to overrule the demurrers by the defendants and for further proceedings according to law.