STATE EX REL. LYNCH, District Attorney of Dane County, Petitioner, v. CONTA, and others, Respondents: DORMAN and others, Necessary Parties, but not denominated Respondents.

*No. 75–459. Argued January 7, 1976.—Decided March 2, 1976.*
(Also reported in 239 N. W. 2d 313.)

For the petitioner there was a brief and oral argument by *Humphrey J. Lynch,* district attorney of Dane county.

For the respondents there was a brief by *Richard L. Cates, John C. Carlson* and *Lawton & Cates* of Madison, and oral argument by *Richard L. Cates.*

A brief amicus curiae was filed by *H. Joseph Hildebrand* and *Flanagan, Steinhilber, Chaney & Hildebrand* of Oshkosh, for Gary R. Goyke.

A brief amicus curiae was filed by *Bronson C. La Follette,* attorney general, and *John J. Glinski,* assistant attorney general, for the attorney general.

HANLEY, J. The following issues are presented for determination by this court:

1. Is this a proper case for declaratory judgment?

2. Should a rule of strict construction be followed in interpreting sec. 66.77, Stats.?

3. Were the private gatherings of the respondents and interested parties "meetings" of a "governmental body" as described in the statute?

4. Were these meetings excepted from open session requirements?

5. In rendering a declaratory judgment, would this court violate the doctrine of separation of powers?

*Declaratory judgment.*

This court has already decided the question of original jurisdiction. Unquestionably the guidelines acknowledged in *Petition of Heil* (1939), 230 Wis. 428, 442, 443, 284 N. W. 42, embrace this case, with its unique issues of interest to this state and its citizens.

Such action, however, was strictly confined to the question of which court should entertain this action, or phrased differently, should the supreme court exercise its original jurisdiction? Remaining to be determined by the court of jurisdiction is the question of the propriety of rendering a declaratory judgment. The granting or denying of relief in a declaratory judgment action is a matter within the sound discretion of the court. *Selective Ins. Co. v. Michigan Mut. Liability Ins. Co.* (1967), 36 Wis. 2d 402, 408, 153 N. W. 2d 523; sec. 269.56 (6),

Stats. This discretionary power is most frequently invoked by the challenge of the adversary of the party seeking judgment, *see: Rudolph v. Indian Hills Estates, Inc.* (1975), 68 Wis. 2d 768, 771, 772, 229 N. W. 2d 671, who poses the question of whether the device is appropriately used. *Miller v. Currie* (1932), 208 Wis. 199, 203, 242 N. W. 570. The unusual roles of the parties here, coupled with statements from the petitioner that indicate an indifference to the very right he supposedly seeks to vindicate, make it quite proper for this court to review this action for compliance with announced standards for a declaratory judgment, even if no challenge is issued by the respondents.

A declaratory judgment may be issued only if the action measures up to the following requirements:

" '(1) There must exist a justiciable controversy—that is to say, a controversy in which a claim of right is asserted against one who has an interest in contesting it.

" '(2) The controversy must be between persons whose interests are adverse.

" '(3) The party seeking declaratory relief must have a legal interest in the controversy—that is to say, a legally protectible interest.

" '(4) The issue involved in the controversy must be ripe for judicial determination. Borchard, *Declaratory Judgments,* pp. 26–57.' " *State ex rel. La Follette v. Dammann* (1936), 220 Wis. 17, 22, 264 N. W. 627, quoted in *Pension Management, Inc. v. Du Rose* (1973), 58 Wis. 2d 122, 127, 128, 205 N. W. 2d 553. *See: State v. WERC* (1974), 65 Wis. 2d 624, 633, 223 N. W. 2d 543.

In his complaint, petitioner states:

"(26) That the petitioner brings this action to obtain an authoritative ruling from this court on whether the meetings violate the open meeting law."

The enforcement provisions of the open meeting law are as follows:

"(8) Any member of a governmental body who knowingly attends a meeting of such body at which a violation of this section occurs shall forfeit without reimbursement not more than $200 for each such violation, provided that he shall not be liable if he calls for a vote on whether the body shall take that action constituting such violation, or if he is recorded in the minutes of the body as voting against the action constituting such violation.

"(9) The department of justice may bring an action under this section on its own motion. In such cases, the court shall award the recovery of the forfeiture together with reasonable costs to the state.

"(10) The district attorney may commence an action under the section upon the verified complaint of any person. In such cases, the court shall award the recovery of reasonable costs to the county. If no action is commenced within 20 days after verification such person may bring an action in his own name and, if the defendant is found guilty of violating this section, the court may award costs and reasonable attorney's fees to the plaintiff." Sec. 66.77, Stats.

In this proceeding, the requested declaratory judgment concerns the applicability of the statute to a situation described in facts stipulated by the parties. This question is markedly different from the question of whether there was a knowing violation of the statute by the named respondents, which would be the focus of a prosecution action. The requested judgment is, however, arising in the penal context, as the petitioner district attorney of Dane county has an interest only under such circumstances.

A review of the above-quoted forfeiture provision demonstrates that this is an act that has penal consequences. 3 Sutherland, *Statutory Construction,* sec. 59.02 (3d ed. 1974). We note that the originally enacted version of the open meeting law contained no enforcement provision. Ch. 289, Laws of 1959. As such it was merely a suggested mode of responsible governmental procedure. By ch. 297, Laws of 1973, the legislature modified the

law and added the forfeiture provision. The petitioner here seeks a construction of the law apparently for enforcement purposes and thus consideration cannot be given to such additional aspects as the "voidability" provision. Sec. 66.77 (3), Stats.

There has been doubt in the past as to whether the declaratory judgment procedure was proper when penal legislation was involved. The general rule now is that rights, status or immunities under penal laws may be the subject of declaratory judgments in a proper case. This was acknowledged in *Waukesha Memorial Hospital v. Baird* (1970), 45 Wis. 2d 629, 635, 173 N. W. 2d 700. It is also generally accepted that a proper case for declaratory judgment is presented only by the request of the party threatened by the application of the penal law. Borchard, *Challenging "Penal" Statutes by Declaratory Action,* 52 Yale L. J. 445 (1943). However, since the parties are in fact adversaries, and if the defendants could have brought this suit as the petitioners and have not protested the converse form, there is no inflexible requirement to dismiss the suit. We do admonish against further suits in this style. Those in the position of the petitioner have a ready and adequate forum for their proposed construction of a law in the normal enforcement action. Declaratory judgment is reserved for those without such available recourse.

Prior cases indicate that this court has been willing to entertain such suits in the past. *In re Petition of State ex rel. Attorney General* (1936), 220 Wis. 25, 264 N. W. 633, this court accepted original jurisdiction for a declaratory judgment sought by the attorney general on the constitutional validity of the Wisconsin Recovery Act, which he was to enforce. An actual controversy was found between him and the tavern industry subject to the act, and judgment upholding the constitutionality was found. Likewise, in *Department of Agriculture &*

*Markets v. Laux* (1936), 223 Wis. 287, 293, 270 N. W. 548, the court approved what it deemed a "declaratory judgment determining whether the questioned sections are constitutional," again brought by the statute's enforcement officers.

These cases are precedent for the conclusion that this court, or any trial court, while not encouraging those charged with law enforcement to petition for declaratory judgments, will accept such cases in the exercise of discretion. Such exercise would be guided by the normal principles of declaratory judgment. In most situations, the action should be refused until the order of parties is reversed so that the party subject to the penal law is plaintiff.

Additionally, Wisconsin has adopted the Uniform Declaratory Judgment Act, which by its language labels itself remedial and explicitly calls for a liberal construction. Sec. 269.56 (12), Stats. As such, it allows broad construction of "any person . . . whose rights, status or other legal relations are affected by a statute. . . ." Sec. 269.56 (2).

Implicit recognition of this limited outlet to prosecutors is demonstrated in sec. 269.55, Stats., and comparable laws of other states which allow a declaratory judgment on whether an item is obscene. Notice is given to all parties of their potential rights before resort is had to the criminal prosecution. *See: State v. I, A Woman— Part II* (1971), 53 Wis. 2d 102, 191 N. W. 2d 897; *Gerstein v. "Pleasure Was My Business"* (Fla. App. 1961), 136 So. 2d 8.

In the present status of this action, the parties involved are certainly adverse. Just as clear is the respondents' interest in contesting this proceeding insofar as it seeks to label their past actions as a violation of the statute. Closer questions are presented as to whether the petitioner has a legally protectible interest in the

controversy, whether the controversy is justiciable in that this right is being asserted against the respondents and whether the controversy is ripe for judicial determination.

Petitioner district attorney has a right of enforcement when he has received a citizen complaint, receipt of which is alleged in his complaint. Is this right of enforcement, coupled with the overall duty of a district attorney under sec. 59.47 (1), Stats., such a right that enables him to seek declaratory judgment relief under our declaratory judgment act? *City of Nevada v. Welty* (1947), 356 Mo. 734, 203 S. W. 2d 459 at 460 and *State ex rel. Hopkins v. Grove* (1921), 109 Kan. 619, 201 Pac. 82 at 84, both acknowledge this right for declaratory judgment purposes.

Is the controversy justiciable, in that the petitioner is asserting his enforcement right against the respondents? Some doubt has arisen on this point following the petitioner's acknowledgment that he would not seek a conviction upon a. declaratory judgment finding a violation of the law.

The respondents urge that the controversy is still alive, in that the citizen complainant may start an enforcement suit if the district attorney declines to prosecute. Sec. 66.77 (10), Stats. Furthermore, the language of the statute does not indicate that the Department of Justice is barred from suit merely because they declined action in the past. Sec. 66.77 (9). Both those parties have submitted *amicus curiae* briefs urging that a violation be found.

It must again be stressed that the question before the court is whether the terms of the act were violated; the question of prosecution is not part of the requested judgment, as it involves the scienter element, a "knowing" violation. The respondents' strong reliance on an exception to the law, one that is arguably imprecise,

certainly impairs any claim that this was a known violation of clear provisions of law.

Doubt will continue until a construction of the statute resolves its meaning. Objections that the criminal prosecution is the only forum for that purpose are in error. Potential defendants may seek a construction of a statute or a test of its constitutional validity without subjecting themselves to forfeitures or prosecution. *Borden Co. v. McDowell* (1959), 8 Wis. 2d 246, 99 N. W. 2d 146; *Wisconsin Fertilizer Asso. v. Karns* (1968), 39 Wis. 2d 95, 158 N. W. 2d 294; *Soglin v. Kauffman* (D. C. Wis. 1968), 295 Fed. Supp. 978, affirmed (7th Cir.) 418 Fed. 2d 163. Respondents certainly wish to know whether they can be prosecuted for similar gatherings in the future. The strongest rationale against dismissal of this action remains their interest in having the propriety of their proceedings clarified, irrespective of how this particular district attorney feels about prosecution for the last two in question. Justiciability is present.

Finally, is the controversy ripe for judicial determination? *State ex rel. La Follette, supra,* provides an example of this criterion. There the state governor sought a declaratory judgment on his power to fill vacancies on boards and commissions, caused by deaths and resignations, until the legislature reconvened. He sought the judgment because he had been advised by the secretary of state that the latter would neither honor the appointments nor pay the salaries of such appointees. In refusing to decide the action on this contingent fact, the court required the governor to actually make such appointments to see if the threat would be carried out. This case presented an example of the key question summarized in the above "ripeness" requirement:

"When are the facts sufficiently developed to admit of a conclusive adjudication, and when are they so contingent and uncertain as to justify a refusal to decide?" Borchard, *Declaratory Judgments, supra,* at 56.

Factual uncertainty was the barrier to an adjudication in the *Waukesha Memorial Case*. The "ripeness" require- ment does not demand that one "act on his own view of his rights and perhaps irretrievably shatter the status quo," *Id.* at 58, yet if another act can be taken to remove contingencies and doubt, it should be taken to make the action proper. Factual circumstances determine whether this factor is satisfied.

By their factual stipulation, the parties have presented a case that is not uncertain. Acts have been taken, and the only contingency is prosecution, which waits upon the requested judgment or perhaps upon future repeti- tion of the decried meetings. The "ripeness" criterion is fulfilled. *Miller v. Currie, supra,* offered a further elaboration on this timeliness aspect of a request for a declaratory judgment. Admonitions that all interested parties be determined and be present, that a determina- tion of solely future rights be avoided, and that decisions not be made on merely contingent interests, all are satis- fied here. The stipulated facts also insure that a decision here will terminate the controversy as to the application of the law to those circumstances. This finality require- ment exists under sec. 269.56 (5), Stats.

*Standard of construction.*

Because a declaratory judgment action may involve a reversal of the roles of the usual plaintiff and defendant, care must be taken in determining where the burdens of proof and persuasion lie. Note, 1941 Wis. L. Rev. 513. Additional care must be exercised in discerning the real nature of the action and the standard of construction to be employed in interpreting the statute. The most per- suasive rationale for allowing a declaratory judgment is the interests of the respondents in having a fair warn- ing as to their penal liability. Likewise, the interest of the petitioner lies only in the enforcement of the law,

in which aspect he must also accept the strict construction that is given to laws being penally applied. *State ex rel. Gaynon v. Krueger* (1966), 31 Wis. 2d 609, 143 N. W. 2d 437.

If the respondents here were involved in a direct forfeiture action, they would be entitled to have a strict construction. The same rule would be appropriate if they commenced the declaratory judgment action. *See: Frank v. Kluchesky* (1941), 237 Wis. 510, 297 N. W. 399. Strict construction of forfeiture laws has been followed even if enforcement is not involved. *Capt. Soma Boat Line, Inc. v. Wisconsin Dells* (1973), 56 Wis. 2d 838, 845, 203 N. W. 2d 369. In *State ex rel. Dept. of Agriculture v. Land O'Lakes Ice Cream Co.* (1945), 247 Wis. 26, 18 N. W. 2d 325, a police power statute regulated the size of containers to be used for the sale of milk and cream. A $500 penalty was to be recovered by the attorney general for violations by manufacturers, as in the present case, while dealers who used nonconforming containers were declared to be guilty of using false measures, which act carried a fine or imprisonment under another statute. The court recognized that the statute as applied to the defendants was, after all, a criminal statute and must be strictly construed such that the failure expressly to permit an act could not be construed as a prohibition. *Id.* at 29. Thus the actual nature of the underlying proceedings dictated this standard even though the enforcement officer was the one who raised the issue as petitioner in a declaratory judgment.

Reference is made to the liberal attitude of the Florida courts in interpreting that state's open meeting law. Fla. Stats. sec. 286.011 (1973). In *Board of Public Instruction of Broward County v. Doran* (Fla. 1969), 224 So. 2d 693, it was held that the law was enacted for the public benefit and should be interpreted most favorably to the public despite its penal nature. In reaching this result,

the Florida court reasoned that the presence of penalties for certain specific violations of the Workmen's Compensation Act did not require that the whole of that act be strictly construed. For an exactly similar analogy, *see: Laman v. McCord* (1968), 245 Ark. 401, 432 S. W. 2d 753. When an act requires many different performances, only some of which are coupled with sanctions for noncompliance, it is obvious that a strict construction is not to be extended to those provisions not carrying a penalty. The analogies applied by Florida and Arkansas are not persuasive when the forfeiture provision, as here, applies to any violation of the entire law and the proceeding involving interpretation are concerned with the punitive aspect. The act places the duty to prosecute any violation on the Wisconsin Department of Justice and the district attorney.

We acknowledge that authority can be found which seems to repudiate a strict construction. Sutherland reviews both the older and more modern justification for strict interpretation rule for punitive legislation, including forfeiture laws. *Id.* at sec. 59.02. He also observes that

"Where public or social interests in penal legislation is especially great the policy of giving penal laws a very strict construction may be relaxed." *Id.* at sec. 59.05.

The authority produced by Sutherland for the above quoted proposition, *Caminetti v. U. S.* (1917), 242 U. S. 470, 37 Sup. Ct. 192, 61 L. Ed. 442, did not pronounce such theory verbatim. The case is in fact not inconsistent with strict construction.

In construing a statute we attempt to find the common sense meaning and purpose of the words employed, and therefore review the intent of the legislature. *State v. Vlahos* (1971), 50 Wis. 2d 609, 616, 617, 184 N. W. 2d 817; *see: State ex rel. Gutbrod v. Wolke* (1971), 49 Wis. 2d 736, 749, 183 N. W. 2d 161. Sutherland's quoted

proposition above is a more narrow example of this broader rule, recognized by Sutherland in sec. 59.06, that the purposes of the legislature are appropriately to be considered in a review of punitive legislation. *Heidersdorf v. State* (1958), 5 Wis. 2d 120, 123, 92 N. W. 2d 217.

The legislature did provide some indication of its intent in the enactment of this statute, and it is to be given great weight. *State ex rel. Harvey v. Morgan* (1966), 30 Wis. 2d 1, 10, 139 N. W. 2d 585.

"66.77 **Open meetings of governmental bodies.** (1) In recognition of the fact that a representative government of the American type is dependent upon an informed electorate, it is declared to be the policy of this state that the public is entitled to the fullest and most complete information regarding the affairs of government as is compatible with the conduct of governmental affairs and the transaction of governmental business. The intent of this section is that the term 'meeting' or 'session' as used in this section shall not apply to any social or chance gathering or conference not designed to avoid this section."

Although the initial wording indicates that a broad application is intended, a qualification appears by the language that the adherence will be only such "as is compatible with the conduct of governmental affairs and the transaction of governmental business." Apparently if open session requirements prevent the fair process of democratic government, the specific requirements are relaxed. Specific exceptions to the law, typically necessary and justifiable occasions for privacy, have been listed in sec. 66.77 (4), Stats., and they both qualify for the intended exception and also illustrate its meaning. Mere government inconvenience is obviously no bar to the requirements of the law.

Our statute does contain the scienter requirement of "knowing." This declaratory judgment, as requested, is

supposedly concerned not with whether the respondents are candidates for the penalty of a "knowing" violation, but rather merely with whether there was a violation. A review of the statute convinces a reader that its meaning is not so plain that a "knowing" allegation can be sustained on every violation that may be developed in its interpretation. The lack of uniformity among petitioner and the two *amici curiae* as to how a violation occurred under the law reiterate that the language is not clear. But in arguing that a liberal rather than strict interpretation should be followed when ambiguities appear, especially when the question of a violation is raised in a penal context, the petitioner would transform this action into an advisory opinion unrelated to its factual contents, contrary to the rules of declaratory judgment. *State v. WERC, supra.*

Not only would the liberal construction be in disregard of the actual controversy, it would also cause the court to enlarge the reach of enacted crimes or alter the incriminating components as prescribed and proscribed by the legislature. *See: Morissette v. United States* (1952), 342 U. S. 246, 263, 72 Sup. Ct. 240, 96 L. Ed. 288. This prohibited practice amounts to legislation by the court. *Frank, supra,* at 517, 518. Attempts to address broader issues through a liberal construction, when a strict scrutiny is given ambiguous statutes in a normal prosecution, would provide a more tangible basis for future prosecutions than is afforded by the law itself. The petitioner, in perhaps seeking a construction such that due process "fair notice" problems are minimized, *see: Frank, supra,* cannot avoid this maxim of interpretation.

We conclude that a liberal construction is contrary to the procedure of a declaratory judgment and poses constitutional problems as well. Due deference should be given to the balance of interests reflected in the statute's stated purpose with resort to a strict interpretation when ambiguity arises from the wording of the statute.

*Open meeting law.*

The broadest provision of the open meeting law is contained in sec. 66.77 (3), Stats.

"(3) Except as provided in sub. (4), all meetings of governmental bodies shall be open sessions. No discussion of any matter shall be held and no action of any kind, formal or informal, shall be introduced, deliberated upon, or adopted by a governmental body in closed session, except as provided in sub. (4). Any action taken at a meeting held in violation of this section shall be voidable."

It states the duty imposed on members of government, in both positive and negative admonitions of the rule. Except under certain specified circumstances, all governmental bodies must conduct their meetings in open sessions; if the meeting of the governmental body occurs under circumstances that do not meet the standards of an open session, then that body is forbidden both from having any discussion and from introducing, deliberating upon or adopting any formal or informal action. Actions taken contrary to this admonition are declared voidable. Although this aspect is unclear, perhaps meaning that tangible actions can be thus voided while intangible thought processes from discussion cannot be reached by such a labelling as "void," the construction of that item is not necessary to this action.

The meaning of "governmental body" is crucial for this proceeding, just as it is the key term to this statutory plan. Besides being used to define "meeting," the term is used with and without "meeting" in the broad statements of coverage and exclusion in sec. 66.77 (3) and (4), Stats., and in the other regulatory admonitions of sec. 66.77 (5), (6), (7) and (8).

In the definition section of the legislation, it is provided that:

"(c) 'Governmental body' means a state or local agency, board, commission, committee, council or depart-

ment created by constitution, statute, ordinance, rule or order; a municipal or quasi-municipal corporation; or a formally constituted subunit of any of the foregoing." Sec. 66.77 (2), Stats.

The open meeting law thus defers the determination of the existence or composition of a particular governmental body to the enactment which creates the body. Stated another way, the question of whether a particular group of members of the government actually compose a governmental body is answered affirmatively only if there is a "constitution, statute, ordinance, rule, or order" conferring collective power and defining when it exists. The creating enactment or the created body in turn might define "formally constituted subunits."

As stipulated in this case, the governmental body whose members allegedly were involved in violating the law was the joint committee on finance. That committee consists of fourteen members of the legislature, drawn from both houses. The committee obviously can be categorized as a "committee . . . created by . . . statute." Sec. 66.72 (2) (c), Stats.

The members of the committee are also members of the legislature, in sessions of which they exercise that power which is conferred upon that body as a whole. Whether the members of the committee are in fact acting as the committee in any given time depends upon the rules governing it that are applicable from the source which created it. Although the actual statute that provides continual authority for the committee does not detail its mode of operation, it is presumably governed by the same structure followed by the legislature. The houses of that body, as well as their committees, lack all power and authority, and thus lack existence as a body, until a quorum, defined as a majority of members, is assembled. Wisconsin Constitution, art. IV, sec. 7; 1975 Assembly Rules 15, 22 (1) ; 59 Am. Jur. 2d, *Parliamentary Law*, p. 320, sec. 4 and p. 322, sec. 6 (1971). The

process of composing a body competent to act officially commences upon a required notice to all members that the organic body is to meet. 59 Am. Jur. 2d, *supra*. Its existence, and therefore its legal meeting, start with a, roll call to determine the presence of a quorum. Jefferson's *Manual of Parliamentary Practice*, art. VI.

Reiterating the above proposal as the proper method for interpreting "governmental body" is the definition of, "meeting" which incorporates the other term:

"(b) 'Meeting' means the convening of a governmental body in a session such that the body is vested with authority, power, duties or responsibilities not vested in the individual members." Sec. 66.77 (2), Stats.

The rather formal language employed—the "convening . . . in a session," and not just any session, but rather a "session such that the body is vested with authority, power, duties or responsibilities not vested in the individual members"—compels a conclusion that those sessions where the members compose a legally competent governmental body are "meetings" under the statute.

At the point of bringing the governmental body to its collective existence, the members are faced with compliance with the open session requirement. If those responsible for calling the meeting have done their duty, a proper site and advance public notice would be procured. Should a deficiency be noted, the body is forbidden to proceed, even informally, with its business. There may, of course, exist grounds as specified in sec. 66.77 (4), Stats., for which a closed session would be had, but sec. 66.77 (5) apparently compels that the decision for a closed session and the nature of the business to be privately discussed must be announced in an open session. This could either occur at an earlier open session which announcs that the body will convene in a future closed session, or else could occur at a meeting already commenced under the open session requirements,

subject to the restraint against reconvening in open session again within a twelve hour period. It is obvious that a governmental body cannot convene in a session that does not satisfy the "open" requirements and then try to remedy the deficiency by announcing in such inadequate circumstances that a closed session will then be undertaken.

The petitioner and the *amici curiae* all would object to any interpretation of the above language that restricts its meaning purely to the formal sense that is intended by the plain language. Urging liberal construction and an alleged intent of the legislature that a different meaning is involved, these parties seek some method to reach those members of a governmental body who would fail to follow the formalities of convening a competent body.

The arguments proposed to reach such end involve a torturous reading of the law's provision. A common tactic is circuitous reasoning, *i.e.,* when any member of a governmental body meets with another member they are thus meeting and are thus a governmental body. The goal sought to be attained by such parties may be reached without doing violence to the plain wording. The problem is adequately addressed in the preamble to the law:

"The intent of this section is that the term 'meeting' or 'session' as used in this section shall not apply to any social or chance gathering *or conference not designed to avoid this section."* (Emphasis supplied.)

Reading this language with the preceding statements that the public is entitled to the fullest information "as is compatible with the conduct of governmental affairs and the transaction of governmental business," the drafters acknowledged that members of government organizations frequently interact and socialize with their fellow workers. Comment, 45 Miss. L. J. 1151, 1167–1170

(1974). Conversations on actual or potential government business are bound to occur. To declare that such discussions must proceed only after public notice and in a publicly accessible place would be not only impossible of enforcement but ludicrous if attempted. A serious question of deprivation of privacy would also be potential.

An exception from the defined gatherings to which the law must apply was therefore enacted for social or chance gatherings. Since it is stipulated that such were not involved here, no attention may be directed to whether the language—"was designed to avoid this section"—modifies those situations. It is clear, however, that such language does pertain to "conferences."

If members of a governmental body intentionally gather to discuss business without undertaking a formal meeting, they can be described as in a conference. It may occur that the entire membership of a body gather and "confer" before proceeding to hold their meeting. The same may happen to a majority and thus a quorum of the membership. Finally any group less than a quorum, down to only two members, may confer.

The statute does not let such possible gatherings exist as an evasion of the law. A conference may be analyzed to see if it is designed to avoid an open meeting requirement. If such intention is discerned, it may thereupon be designated a "meeting" under the statute for analysis of its exact noncompliance with open session requirements.

Obviously whenever such intent is admitted, little problem is presented to the enforcement officer. More often, however, circumstances will be presented where sound discretion will be required of the prosecutor and courts; this will be especially required when the conference is charged as the crucial point in decision-making, with the formal meeting being a mere "rerun." Wickham, *Let the Sun Shine In! Open Meeting Legislation*

*Can Be Our Key to Closed Doors in State and Local Government,* 68 N. W. U. L. Rev. 480, 490-495 (1973). The revision of our open meeting law when forfeiture was added as a sanction also included the addition of conferences "designed to evade the law." The establishment that such occurred, for prosecution purposes, is obviously a question of fact. Circumstances themselves, however, may dictate that evasion is being designed. If every member of a governmental body is present at a conference and any of the broad activity that composes governmental activity as defined in sec. 66.77 (3), Stats., is undertaken, a question of evasion is posed; the members are exposing themselves to the jeopardy of a prosecution. A chance gathering would not justify governmental activity being intentionally conducted, unless an emergency or other difficulties (other than that engendered by open session compliance) made such action necessary. A planned conference of the whole offers no such exigent excuse. Likewise, when a majority and thus a quorum gather, it is a rare occasion which can justify any action without open session compliance and therefore not be considered an evasion of the law. Quorum gatherings should be presumed to be in violation of the law, due to a quorum's ability to thereafter call, compose and control by vote a formal meeting of a governmental body.

As to the March 11, 1975 gathering, petitioner and both *amici curiae* agreed that a majority, a quorum of the committee, participated in a private conference. Their purpose was to receive expert advisory opinions, which action would fall into the informal government activity described in sec. 66.77 (3), Stats.

When the members of a governmental body gather in sufficient numbers to compose a quorum, and then intentionally expose themselves to the decision-making process on business of their parent body—by the receipt of evidence, advisory testimony, and the views of each other

—an evasion of the law is evidenced. Some occurrence at the session may forge an open or silent agreement. When the whole competent body convenes, this persuasive matter may or may not be presented in its entirety to the public. Yet that persuasive occurrence may compel an automatic decision through the votes of the conference participants. The likelihood that the public and those members of the governmental body excluded from the private conference may never be exposed to the actual controlling rational of a government decision thus defines such private quorum conferences as normally an evasion of the law. The possibility that a decision could be *influenced* dictates that compliance with the law be met.

Only seven of the fourteen members of the committee were present at the April 24, 1975 meeting. This is less than a quorum. *Amicus curiae* attorney general would find no violation here. Petitioner and citizen complainant Gary R. Goyke urge that this private conference was in violation of the law.

The arguments of Goyke on the circumstances presented in the April 24th meeting are clear and persuasive. Because the committee has an even number of members, all action can be effectively stymied if seven members, one-half of the whole body, vote and act in concert, a unit vote that may occur because the seven have engaged in private, group investigation of the matters before their parent body. It is a short step from the initial and predictable ability to frustrate all action to thereafter control it, through the shift of one member of the unorganized other half. In committees with an even number of members, this "negative quorum" has the automatic potential of control that, like quorums elsewhere, dictates that it publicly engage in the public's business.

In the authority cited to bolster his argument on the "negative quorum," Goyke refers to the decisional law

of Florida. By drawing a precise line of distinction as to why the open session requirements should apply under the circumstances, he was able to avoid the dubious results that have occurred under that law.

In *Bigelow v. Howze* (Fla. App. 1974), 291 So. 2d 645, 647, it was held that the decision-making processes of a duly appointed subcommittee of a public body, if composed of more than one member, must be held in public, even though such subcommittee members constitute less than a quorum of the public body who must act on their recommendation. It is clear that the same court would have applied the law to any informal group of members of a governmental body, less than a quorum, who discuss pending business. Supporting authority was a concurring opinion in another case which decried attempts to hide a conference decision of a quorum by breaking into separate but communicating subgroups. The end result of *Bigelow* was the finding that two members of the group, assigned to investigate an out-of-state project, had violated the open meeting law by discussing their impressions during the return journey.

The sham used to conceal the existence of a privately-meeting quorum does not require that the open meeting requirements be applied to all private conferences involving less than a quorum. It is certainly possible that the appearance of a quorum could be avoided by separate meetings of two or more groups, each less than quorum size, who agree through mutual representatives to act and vote uniformly, or by a decision by a group of less than quorum size which has the tacit agreement and acquiescence of other members sufficient to reach a quorum. Such elaborate arrangements, if factually discovered, are an available target for the prosecutor under the simple quorum rule.

An absolute rule requiring an open session, simply when only two members of a body confer, clearly is not

within the statute. Such a rule would prohibit conferences even if the number of members were less than the appropriate quorum or "negative quorum" test (according to the parent body's composition) and were not otherwise evasions of the law, such as concealed quorums.

Proponents of such coverage would argue that minority groups are capable of fashioning government action in secret, although to a lesser degree than quorum groups. When the membership of a governmental body is small, only a few members can control it; when the body is large and the conference group is also large but just short of a quorum or "negative quorum," effective control is also possible. This is so because absences, abstentions and the random votes of unaffiliated members may propel their private decisions into acceptance.

Without precise guidelines, this proposed construction apparently extends to any conference between two governmental body members. Even a liberal interpretation of the statute hardly supports this conclusion.

Initially, the meetings of a minority lack the efficacy that commands that quorum or "negative quorum" conferences be held in open session. In a quorum decision in private, the conference participants have the later power to call and establish a competent official body, and then immediately vote their predecided position into existence. This is known beforehand and can be automatic, subject to the possible change of heart of a participant. When the group in conference is a minority, their opportunity to take such ultimate action depends on chance factors. There is no guarantee of success. Both the innocent and the schemer have the same chance that unpredictable factors will put them in a position to dictate a result. This limitation separates them from conferences which can dictate a binding result, a strength that allows the presumption that an evasion of the laws occurs in a quorum or "negative quorum" private gather-

ing. Lack of this strength compels the conclusion that minority group gatherings are no evasion, even if there is a possibility of their attaining a chosen goal.

Besides lacking that efficacy that determines whether a conference is a "meeting," minority group gatherings appear to be beyond the coverage intended by the legislature. To impose open session requirements on all government business discussions between at least two members of the same body, merely on the basis that such discussion somewhat enhances the possibility that mutual interests will be furthered and possibly carried out in the form of some future official action, would virtually impede much of the preliminary labor involved in any government action and thus be incompatible with the necessary "conduct of governmental affairs and the transaction of governmental business."

A law embracing such private discussions would raise many constitutional objections. Given a choice of possible interpretations, this court must select the construction that results in constitutionality rather than invalidity, *In re Petition of Madison Metropolitan Sewerage Dist. v. Department of Natural Resources* (1974), 63 Wis. 2d 175, 185, 216 N. W. 2d 533, just as we will choose a reasonable construction rather than one that leads to unreasonable or absurd results, *Browne v. State* (1964), 24 Wis. 2d 491, 131 N. W. 2d 169. The strict rule of construction would also dictate that the law be so applied, if it could be contended that the legislative intent is indeterminative, because the proposed construction reaching two-member meetings is an outgrowth of statutory ambiguity at best.

This imprecision initially opens the law to the charge that it is too vague to be enforced consonant with due process. *Jones v. State* (1972), 55 Wis. 2d 742, 745, 746, 200 N. W. 2d 587. Additionally, and even if the law could be viewed to clearly cover two-member discussions, prob-

lems of overbreadth would occur. This constitutional doctrine decries government penal intrusion into areas protected by the individual's First Amendment freedoms, such as of speech and of association. *State v. Mahaney* (1972), 55 Wis. 2d 443, 447, 448, 198 N. W. 2d 373. Equally abhorred is the sweep of the law that comes so close as to have a discouraging or "chilling" effect on the exercise of these rights. *Jones, supra,* at 747. This problem was apparently recognized and resulted in the exclusion of chance and social gatherings from the reach of the statute. A construction of the law that covers minority gatherings down to two members would resurrect such a problem.

The argument in petitioner's brief does not explicitly acknowledge a "negative quorum test," so some attention should be directed as to whether he has proposed a viable alternative basis for finding a violation. By the stress laid on certain facts, it appears that he is arguing that some particular circumstances involved in these meetings are perhaps such a basis.

Initially, most of his argument, as indicated by the topic headings in his brief, concerns the eleven-member meeting of March 11, 1975. The fact that the members involved were all of the same political party, one that has a majority control in the legislature, is cited. This has no particular significance when the more important factor of "quorum" or "negative quorum" in numbers is involved. Perhaps the implication is raised that the seven member meeting of April 24, 1975 should be afforded special coverage because those members could exercise partisan influence on their nonattending colleagues. That argument is totally refuted by the facts. The Senate members refused to attend the meeting in the apparent belief that it was improper. In the official action of the whole committee, none joined with the seven respondents in approving a budget proposal; a

majority was obtained only with the vote of a member of the opposition political party.

Mention is also made of the presence of legislative finance bureau members at these conferences. Although the argument is directed mainly to the "partisan caucus" exception, discussed *infra,* there may perhaps be the implication that the use of the talents of these government employees transformed the conference into a governmental body meeting. Government activity in general, as it is so broadly defined in sec. 66.77 (3), Stats., to include even discussion of government business, is a necessary element in any gathering that qualifies for the open session requirement, but the occurrence of such an activity as discussion does not by circuitous reasoning somehow transform an otherwise unqualified gathering into a "meeting" of a "governmental body." Neither would the presence of bureau members. The statutory authorization directing its activity allows the bureau to advise members of the legislature, not just its parent body and committees. Sec. 13.95 (1) (e). Presence of these members is indicative of the conduct of governmental business, which in turn is relevant in determining whether a conference in evasion of the law is occurring, but this presence does not transform an informal conference into the strictly-defined official governmental body meeting.

*Statutory exceptions.*

The conferences under scrutiny here must be tested for open session compliance unless otherwise excepted from that requirement.

A governmental body is allowed to convene in closed session for purposes of:

"Partisan caucuses of members of the state legislature"; sec. 66.77 (4) (g), Stats.

Respondents claim reliance on this exception. It is stipulated that committee members who were also members of the Democratic party were the only governmental body members involved in the conferences. Another stipulation acknowledges that the committee chairman assigned specific areas of the budget to the party members for their study and recommendation to their partisan comrades.

Petitioner initially objects to the depiction of these conferences as mere partisan caucuses. One curious argument is that they cannot be such if government business is being discussed. The statutory exception does not so qualify its application. Partisan caucuses have little purpose other than to choose party leadership and thereafter discuss governmental business for the purpose of attaining a unified party position on the subject. To hold that legislative members can have partisan caucuses but cannot discuss governmental matters would render the statutory language superfluous, which is to be avoided. *Associated Hospital Service, Inc. v. City of Milwaukee* (1961), 13 Wis. 2d 447, 109 N. W. 2d 271.

Objection is also raised that the conference cannot be called a partisan caucus because of the presence of the bureau members. The status of the governmental body members, not that of the resource people called in to assist them, is determinative of whether the caucus is partisan. Members of the various legislative bureaus, at any rate, are to be strictly nonpartisan, apparently for just such a purpose. Secs. 12.92, 13.93 and 13.94, Stats.

The key argument against the application of the exception under these circumstances is the assertion that it was intended only for the traditional, institutionalized partisan caucuses of the whole of the houses.

This contention was announced by the attorney general in his informal opinion concerning these meetings. In the context of that writing, it appears to be a conclusion

that follows his earlier assumption that the reach of the law is to be liberally construed and its exceptions strictly interpreted against those seeking avoidance. As indicated before, imprecision in the law is to be interpreted in favor of claimants threatened with forfeitures.

Obviously the exception does apply to such whole house partisan caucuses. No persuasive argument is forwarded as to why it does not also apply to partisan caucuses of the committees. Even apart from its source in liberal interpretation, the attorney general's conclusion would be supportable if the exception were simply for "partisan caucuses of the state legislature" rather than "partisan caucuses of members of the state legislature." Sec. 66.74 (4) (g), Stats. It is no secret that the legislature has resorted to the committee system to administratively cope with the press of business before it. In his informal opinion, the attorney general acknowledged the "custom" of partisan caucuses on the particular committee involved here. Counsel for the respondents confirmed that legislative committee members do have partisan conferences. There is no basis to conclude that such caucuses are prohibited by language that plainly includes them. We note that within a "formal, institutionalized" caucus of the whole house, committee members could be instructed to confer and discuss pending business in their committees for a progress report and recommendation to the whole body, thus achieving the same result sought to be avoided by the unsupported and restrictive interpretation offered against the respondents here.

It should also be noted that "partisan caucuses" are inherently conferences and not "meetings of a governmental body." Thus the prior notice requirement of a closed session of a governmental body meeting is also not applicable.

It may appear that committee partisan caucuses unduly inhibit the open meeting law and are unnecessary

for the "conduct of governmental affairs and the trans-action of governmental business." Sec. 66.77 (1), Stats. However, that contention is equally applicable to partisan caucuses of the whole. Yet it was the legislature, not this court, which determined to provide exceptions to the law and drafted them to its own purposes. Not every state that has an open meeting law includes its state legislature within the coverage. The legislature may redraw or abandon the "caucus" exception if this construction is not in accord with its intent, and would be the proper forum for citizen dissatisfaction with a partisan caucus exception. Since the voters of this state apparently give some weight to party labels, there may in fact be a silent but overwhelming majority who believe that their party should be able to privately caucus in the legislature and its committees.

*Issue of separation of powers.*

The respondents contend that the constitutional guidelines of separation of powers precludes this court from entering a declaratory judgment.

Various cases are analyzed and abstract principles are thereupon distilled by the respondents. It is argued that the legislature has broad powers, which it may use at its discretion, which may include "arbitrary and improper" judgment, *In re Falvey* (1858), 7 Wis. 528, 538 or questionable motives, *State ex rel. Reuss v. Giessel* (1952), 260 Wis. 524, 51 N. W. 2d 547. Further, it is noted that the legislature can act contrary to its own rules of procedure. *McDonald v. State* (1891), 80 Wis. 407, 412, 50 N. W. 185, and, it is claimed, ". . . contrary to statutes which purport to regulate procedure, more particularly, the antisecrecy statute." *Outagamie County v. Smith* (1968), 38 Wis. 2d 24, 155 N. W. 2d 639; Respondent's Brief, p. 15. Finally, courts will intervene only if the legislative procedure or end result constitutes

a deprivation of a constitutional right. *See: State ex rel. Elfers v. Olson* (1965), 26 Wis. 2d 422, 426, 132 N. W. 2d 526.

This last pronouncement must be corrected by the qualification, obvious in the context of the cases and specific in *Elfers, supra,* that the court will not overturn the decisions of the legislature. As previously stated, a requested declaratory judgment cannot address hypothetical questions, especially that of the validity of the actions of the committee after a violation of the open meeting law occurred in its proceedings. The question posed here is whether certain facts compose a violation of a law enacted by the legislature. The possibility that some legislators may tend to be inhibited in their future proceedings, due to the chance of a forfeiture action, does not equate with legislative decisions being questioned by the judicial branch of government. This application of the law is only to individuals.

A more persuasive rationale for this same result, one which may incidentally offer guidance on the jurisdiction of the courts in reviewing legislative decisions, does exist.

Respondents correctly assert that mere violations of parliamentary rules of procedure are no grounds for voiding legislation. *McDonald, supra;* 59 Am. Jur. 2d, *Parliamentary Law,* secs. 1–2. The obvious rationale is that they may be suspended by the body and have no binding force on subsequent terms of the body. *Id.* Respondents undoubtedly have no quarrel with the opposite time-honored precept, established in *Marbury v. Madison* (1803), 1 Cranch 137, 2 L. Ed. 60 that the judiciary may review the acts of the legislature for any conflict with the constitution. *Elfers* repeated this duty. An area of uncertainty may exist as to the jurisdiction of a court to review the activity of a legislature for a violation of a statute duly enacted by it. Respondent

questions such power on the basis of the *Outagamie County Case.*

This issue has application to both the jurisdiction of a court to challenge the validity of the ultimate decisional act that is produced through such activity, as well as the jurisdiction to impose any statutory sanctions that would be applicable. Implicit in this later question is the apparent belief of the respondents that a legislature could not delegate such forfeiture authority, even if the statute plainly applies to them, as here. The doctrine of separation of powers presumably prevents what would otherwise constitute an intentional waiver.

A violation of a statute in the enactment process of regulations, by bodies of lesser status than the highest legislature of a jurisdiction, renders such regulations void even if passed in conformance to the lesser body's internal rules of procedure. *Anderson v. Grossenbacher* (Tex. Civ. App. 1964), 381 S. W. 2d 72; *Heiskell v. Baltimore* (1886), 65 Md. 125, 4 Atl. 116. These decisions indicate that statutory law is to equate with the organic constitutional law, but since they are made in the context of bodies subordinate to the source of the statute, they are of limited application to the particular question involved here.

Of more importance is *Ex parte McCarthy* (1866), 29 Cal. 395. The California legislature had ordered a newspaper publisher to give testimony before the body on his knowledge of bribery among its members. Upon his refusal, he was jailed for contempt, a power vested in that legislature by its constitution. McCarthy petitioned the court for his release on grounds that included denial of counsel by the legislature. The court there cited *In re Falvey, supra,* in refusing to act, a case which is relied on by the respondents for their contention that the judiciary may not review the discretionary judgments of the legislature. However, both *Falvey* and *McCarthy*

reiterate that the court may review the action to see whether the body had exceeded its jurisdiction. *Falvey, supra,* at 553; *McCarthy, supra,* at 403. The California court went further:

"Had the Senate the power or jurisdiction to investigate the charges of bribery in question for any purpose?

"We shall first consider this question by the light of the common parliamentary law, independent of any restrictions placed thereon by the Constitution *or any laws made in pursuance* thereof.

"A legislative assembly, when established, becomes vested with all the powers and privileges which are necessary and incidental to a free and unobstructed exercise of its appropriate functions. These powers and privileges are derived not from the Constitution; on the contrary, they arise from the very creation of a legislative body, and are founded upon the principle of self preservation. The Constitution is not a grant, but a restriction upon the power of the legislature, and hence an express enumeration of legislative powers and privileges in the Constitution cannot be considered as the exclusion of others not named unless accompanied by negative terms. A legislative assembly has, therefore, all the powers and privileges which are necessary to enable it to exercise in all respects, in a free, intelligent and impartial manner, its appropriate functions, except so far as it may be restrained by the express provisions of the Constitution, *or by some express law made unto itself,* regulating and limiting the same." (Emphasis added; citation omitted.) *Id.*

In expressing the legislature's power, there is a perception by the court that statutes are more equatable with the constitution than with mere internal rules and must be adhered to by their makers.

It is not all that clear that *Outagamie County* contradicts this position. By an act of the legislature, the lawmakers directed the governor to appoint a special committee, whose composition was defined, which would establish criteria and evaluate proposals meeting such

criteria relating to a site for a new state university. The committee was to recommend sites to the governor and other officials who, with the assistance of the legislature, would choose a site. A citizen complainant brought suit for a declaratory judgment that would declare void the recommendation and choice. The petitioner there claimed that the committee's recommendation violated its publicly announced criteria and that the committee had established new criteria in a session violating the then existing open meeting law, sec. 14.90, Stats. 1967.

This court refused to enter a declaratory judgment on the general basis that since no conceivable remedy could be afforded the petitioner to vindicate such a declaration, the judgment would not terminate the controversy. The perception that no remedy could be afforded because of violations of a statute's requirement that criteria be followed and because of a violation of a separate open meeting requirement may be attributed to the fact that neither statute had any provision for rendering the result of acts in violation void. Voidability and forfeiture were later added to the open meeting law. *Outagamie County* did not announce that the statutory law does not bind the legislature in its law-making procedures.

Sec. 66.77, Stats., itself authorizes actions to be brought against members of any governmental body who knowingly violate that section and represents the expressed will of the legislature in this respect. This court is being asked to construe a statute, not to interfere with the functions or the separate power of the legislative branch of government. In construing the statutes as a whole, it is necessary to hold that the legislature intended sec. 66.77 to apply to legislators and legislative committees, subject to expressed statutory exceptions. The creation of sec. 66.77 (4) (g) and (h) would be superfluous if the legislators were not bound by the

open meeting law. Rules of construction dictate against such interpretation.

This rationale is not contradictory of the recent decision of this court in *State ex rel. Lynch v. Dancey,* ante, p. 287, 238 N. W. 2d 81. In that case, the open meeting law was found inapplicable because of its conflict with the superintending power of this court as expressed in art. VII, sec. 3 of the Wisconsin Constitution. Although duly enacted legislation is ordinarily effective as a constraint or guide on all branches of government, it cannot overpower the express or implied applications of that more fundamental law, the state constitution.

In summation, sec. 66.77, Stats., was clearly applicable to the joint finance committee. The committee is required to conduct its meetings under the open session requirements, including public notice and advance announcement of closed sessions, when it is formally constituted and thereby possesses the vitality to act effectually on governmental business. As members of a governmental body, the committee members are potentially subject to the law when they meet and engage in the broad range of activity that can be termed the conduct of governmental affairs. When the circumstances of an informal gathering are such that a quorum of a governmental body is present and business within the ambit of this body is discussed, as in the March 11, 1975 conference of the committee Democrats, then the law applies. When the same activity takes place in a conference of exactly half the members of a governmental body, as in the April 24, 1975 gathering of the committee assembly Democrats, the law also applies. Failure to meet open session requirements results in the presumption that conferences such as these were intended or designed to avoid the law that is applicable to the formal meetings of the governmental body. Forfeitures

could result. Participants at these conferences may in fact demonstrate that no evasion of sec. 66.77, Stats., was intended. Emergency circumstances may be a valid justification. The law itself provides for private "partisan caucuses" of members of the state legislature. Since that body is frankly political, this exception apparently was allowed to accommodate the partisan function even when circumstances otherwise dictate that the law is being evaded; the distinction between the conduct of governmental affairs and partisan views of the same is impossible of definition in participatory, political government. The stipulation by the parties admits that the two meetings involved here were attended solely by committee members of one political party. It also impliedly acknowledges the interrelation of politics and government. Since no restriction was placed on the realm of matters that the private partisan caucuses could address, the two conferences cannot be found to be in evasion of the law.

We conclude that a declaratory judgment may be entered, but caution against such use of the device by prosecutors. We construe the open meeting law and its exception to apply, through use of legislative intent and strict construction. The case is accepted, as not contrary to separation of powers, in that it concerns application of the forfeiture penalty to members of a body, not to the branch of government itself.

*By the Court.*—It is declared and adjudged that sec. 66.77, Stats., is applicable to legislative proceedings subject to certain expressed statutory exceptions. It is further adjudged that the respondents and necessary parties respectively were not in violation of said statute on March 11, 1975 and April 24, 1975.

DAY, J., took no part.

WILKIE, C. J. *(concurring)*. The open meetings law expressly declares that it is the public policy of Wisconsin

that "the public is entitled to the fullest and most complete information regarding the affairs of government as is compatible with the conduct of governmental affairs and the transaction of governmental business."[1]  The prevention of secrecy in government is thus a matter of basic public interest in Wisconsin.  Under these circumstances I think that the open meetings law should be liberally construed so as to effectuate this broad public policy.  This is the position taken by the Florida courts, which have held that that state's "Sunshine Law" was enacted for the benefit of the public and should be construed most favorably to the public despite its penal nature.[2]  This is also the position taken by Sutherland, who recommends that the rule of strict construction should be relaxed when the public and social interests in penal legislation are very great, as they are here.  A more liberal construction is especially appropriate where, as here, the maximum possible penalty does not threaten the personal liberty of offenders, but at most exposes them to a forfeiture of $200.[3]

Nevertheless, even construing this statute liberally, I agree with the majority that, on the basis of the facts stipulated by both the respondents and the district attorney, the conclusion must be that the open meetings law in its present form did not require these two meetings to be open.  This court cannot create open government by *fiat*, however desirable a public policy open government may be.  This court is limited to interpreting and declaring the intent of the legislature when it enacted the open meetings law.  It is clear from the stipulated facts that the legislature, in enacting the present open meetings law, with its various exceptions and

[1] Sec. 66.77 (1), Stats.

[2] *Board of Public Instruction of Broward County v. Doran* (Fla. 1969), 224 So. 2d 693.

[3] Sutherland, *Statutes and Statutory Construction* (4th ed. 1972), sec. 59.05.

qualifications, intended to permit conferences like the two in question here.

I have been authorized to state that Mr. Justice BEILFUSS joins in this concurrence.

ROBERT W. HANSEN, J. *(dissenting)*. This original action for declaratory relief challenges the legality of two closed-to-the-public meetings held by members of the joint committee on finance of the state legislature. At the first such meeting, a full quorum of the committee was present. At the second, one-half of the committee members were present, a "negative quorum" sufficient to block committee action. At both meetings, all committee members who were invited and attended were members of one political party. Both closed meetings were called to discuss matters that were to come before the full committee in its public sessions.

Where those participating in a closed-to-the-public session of a committee of the legislature are not members of a single political party, the court majority holds such secret sessions to violate the open meeting statute.[1] The secret meetings convened to discuss or decide matters to come before the committee or body in a public session are, the majority holds, "conferences,"[2] which, if "designed to avoid" the open meeting law, are illegal under sec. 66.77.[3] The majority holds such closed session or conference to be a violation of the open meeting law if (1) the full membership is present; (2) a quorum is

---

[1] Sec. 66.77, Stats.

[2] The majority states: "If members of a governmental body intentionally gather to discuss business without undertaking a formal meeting, they can be described as in a conference."

[3] The majority continues: "The statute does not let such possible gatherings exist as an evasion of the law. . . . If such intention [to avoid] is discerned, it may thereupon be designated a 'meeting' under the statute for analysis of its exact noncompliance with open session requirements." *See:* Sec. 66.77 (1), Stats.

present; or (3) one-half the membership, a "negative quorum," is present. In each of the situations listed, the majority holds that the issue becomes whether or not the secret meeting was "designed to avoid" the requirements of the open meeting law. The writer agrees with these conclusions of the court majority, but would add that a secret session or conference of less than one-half of the members of a legislative committee or governmental body ought also be held to be illegal where there is present an intent to avoid the statute, plus the ability to control or determine a decision to be made at the public session of the committee or body.[4] The conference of less than half of the members or of a minority group in the body may not qualify as a "meeting" of the body,[5] but it can constitute a deliberate conspiring to violate the open meeting requirement, and that of itself is a violation of law.[6] Given an "intent to avoid" and ability to influence or control decision-making, the writer would include in the proscription meetings of less-than-half of the membership of a governmental body.

However, the majority holds that, as to committees of the legislature, where those invited to and participating in a closed committee meeting belong to one political party, their secret session becomes a "partisan caucus," exempted from the antisecrecy requirements by the open meeting law.[7] The state legislature has set forth excep-

---

[4] The majority concedes: "It is certainly possible that the appearance of a quorum could be avoided by separate meetings of two or more groups, each less than quorum size, who agree through mutual representatives to act and vote uniformly, or by a decision by a group of less than quorum size which has the tacit agreement and acquiescence of other members sufficient to reach a quorum."

[5] *See:* Sec. 66.77 (2) (b), Stats., providing: " 'Meeting' means the convening of a governmental body in a session such that the body is vested with authority, power, duties or responsibilities not vested in the individual members."

[6] *See:* Sec. 939.31, Stats.

[7] *See:* Sec. 66.77 (4) (g), Stats.

tions, eight of them, to its general mandate that: "No discussion of any matter shall be held and no action of any kind, formal or informal, shall be introduced, deliberated upon, or adopted by a governmental body in a closed session. . . ."[8] The exception relied upon to validate the two secret sessions, here challenged, is sub. (g) exempting "Partisan caucuses of members of the state legislature." The majority opinion finds the two secret or closed meetings, here challenged, to have been such "partisan caucuses," and as such exempted from the requirements of the state open meeting law. The writer disagrees.

The majority holds that party members on a committee of the legislature may meet in advance and in secret to decide what is to be done at a subsequent public meeting of such legislative committee. At the same time, it holds that such a quorum of such committee, if involving members of both political parties, may not meet to discuss or decide in secret what the committee is to do, at least not "with intent to avoid the [open meeting] section." Thus the caveat is limited to insisting that no one from another party or an independent be invited to the closed meeting. In reaching this somewhat startling result, the majority limits itself to construing the open meeting law itself. The writer would go further to include the constitutional mandate in this state against secrecy in the carrying out of its legislative function by the state legislature, to wit:

"Section 10. Each house shall keep a journal of its proceedings and publish the same, except such parts as require secrecy. *The doors of each house shall be kept open except when the public welfare shall require secrecy.* Neither house shall, without the consent of the other, adjourn for more than three days."[9] (Emphasis supplied.)

---

[8] Sec. 66.77 (3), Stats.

[9] Art. IV, sec. 10, Wis. Const.

Keeping the doors open does not mean leaving them ajar only when roll calls are taken and votes are recorded. Keeping the doors open requires their not being locked at any stage of the lawmaking process "except when the public welfare shall require secrecy." Keeping the doors open refers to committee sessions, as well as sessions of the full senate or assembly, and includes the debating and deciding on legislation as well as the voting and recording of votes. The majority opinion notes that some states do not include the legislature in their open meeting law. The state constitution in our state makes such self-exclusion from an antisecrecy law meaningless. The majority states that our legislature has made the exceptions and ". . . drafted them to its own purposes." The state constitution does provide that: "Each house may determine the rules of its own proceedings,"[10] but that right is subject to and limited in our state by the constitutional mandate that doors of the legislature be kept open during the lawmaking process. It is not correct to assume or imply that, if our state legislature had exempted itself from the provisions of its open meeting law, it could conduct its lawmaking function in secret. A constitutional mandate does not need legislative reenactment to remain operable.

As to proceedings of the legislature, in this state, public proceedings are constitutionally required ". . . except when the public welfare shall require secrecy."[11] Exemptions from such constitutional insistence upon openness cannot be legislatively created or judicially upheld except when and where required by the public welfare. This applies to legislative deliberations as well as actions of the legislature, for both are integral parts of the legislative process.[12]

---

[10] Art. IV, sec. 8, Wis. Const.

[11] Art. IV, sec. 10, Wis. Const.

[12] *See:* 56 Am. Jur. 2d, *Municipal Corporations,* p. 215, sec. 161, stating: ". . . [U]nder a statute providing that actions of

As the writer views the matter, the answer as to a possible constitutional infirmity as to the entire exemption of "partisan caucuses" from the requirement of openness depends upon the definition given to the word "caucus." An accepted and widely used dictionary defines the word thusly: "[A] closed meeting of a group of persons belonging to the same political party or faction [usually] to select candidates or to decide on policy."[13] Even this broad definition would not seem to fit the situation of the two challenged meetings here before us. Here the parties have stipulated that the cochairman of the joint committee on finance "assigned subject areas of the budget" to individual members and "made them responsible for studying such areas," with the secret sessions held for such individual members to report "their findings and recommendations." Unless form is to replace substance, whatever the purpose stated or the label given such delegation, it appears clear that the action of the particular committee is the target, not any matter of party organization or general party policy. Seven or eleven members of one party on a committee could not be determining the party policy for their party colleagues in the senate or assembly. They would be discussing and deciding only what a particular committee would do. Committee action, not general party policy or organization, is involved.

---

local legislative bodies be taken openly and that their deliberations be conducted openly, it has been held that meetings of a county board of supervisors must be held openly, both for deliberation as well as action, since deliberation and action are recognized as dual components of the collective decision-making process and the meeting cannot be split off and confined to one component only so far as the right of the public to attend is concerned."

[13] Webster's, *Seventh New Collegiate Dictionary*, based on Webster's, *Third New International Dictionary* (1967), published by G. & C. Merriam Company.

The question of construction becomes one of the legislative intent in creating this exemption for "partisan caucuses of members of the legislature." The intent of the legislature is a controlling factor in the interpretation of a statute.[14] The writer would find the legislative intent and construe the statutory exemption to refer solely to the traditional and institutionalized party caucuses composed of all members of a political party in the assembly, in the state senate or, on occasion, in the two houses. The rules of senate and assembly refer to no other type of caucus. Even under the dictionary definition, it is only such caucuses of all party members in one branch of the legislature that can "select candidates or . . . decide on policy," meaning the policy of the party members in senate or assembly as to a matter pending before the legislature. The basis for preferring and adopting such strict construction of the word "caucus" is that it alone furthers the general purpose of the open meeting statute and best stays within the constitutional limit. If three members of a five person legislative committee can, assuming they belong to the same party, meet in secret to determine what the committee is to do when it meets in public, the exemption as to a "partisan caucus" is broadened to where public business can be transacted in secrecy. This is contrary to the constitutional mandate and purpose of the statute. In determining legislative intent, consideration is to be given to the object sought to be established by the enactment.[15]

The majority applies the rule of strict construction to the statute requiring open meetings. The writer would apply the rule of strict construction to the exemption.

[14] *See: Safe Way Motor Coach Co. v. Two Rivers* (1949), 256 Wis. 35, 39 N. W. 2d 847.

[15] *Loof v. Rural Mut. Casualty Ins. Co.* (1961), 14 Wis. 2d 512, 111 N. W. 2d 583.

Strict construction ought here be applied against secrecy, not for it. Such strict construction of the word "caucus" is here suggested by the declaration of policy in the open meeting law that is an aid and guide to construction of the rest of the statute.[16] It is indicated by the declaration of policy that our representative form of government is "dependent upon an informed electorate."[17] It is further indicated by the legislative declaration of the public policy as entitling the public "to the fullest and most complete information regarding the affairs of government as is compatible with the conduct of governmental affairs."[18] It is indicated by the constitutional mandate that doors of the legislature be kept open "except where the public welfare requires secrecy."[19] The writer would construe the reference to "partisan caucuses" in the open meeting law to apply only to caucuses of all party members in either the assembly or state senate or both.

The writer would conclude that both the meetings of members of the legislature's joint committee on finances here challenged were not within the exemption of sec. 66.77 (4) (g), Stats., relating to "partisan caucuses," and were illegal under the requirement of open meetings of sec. 66.77 (3), but only if it were established that the two conferences were "designed to avoid this section." Whether the two meetings here challenged were thus "designed to avoid" the requirements of the open meeting law cannot easily be discerned or determined on this

---

[16] Sec. 66.77 (1), Stats., providing: "(1) In recognition of the fact that a representative government of the American type is dependent upon an informed electorate, it is declared to be the policy of this state that the public is entitled to the fullest and most complete information regarding the affairs of government as is compatible with the conduct of governmental affairs and the transaction of governmental business. . . ."

[17] *Id.*

[18] *Id.*

[19] Art. IV, sec. 10, Wis. Const.

record. The record before us consists of affidavits which do not clearly establish a "design to avoid" the provisions of sec. 66.77. That issue as to design or intent here is largely a matter of drawing inferences from facts alleged or stipulated to. The record here appears to permit the drawing of different or conflicting inferences. This court, on this record at least without the taking of additional testimony as to material facts, ought not, and, as the writer sees it, cannot here determine the issue of design or intent. Therefore, I would dismiss this complaint without prejudice, leaving the parties to their options and remedies at the trial court level.