MORRIS SLAVNEY, Chairman Wisconsin Employment RelationsCommission
You ask whether subch. IV, ch. 19, Stats. (1975), entitled "Open Meetings of Governmental Bodies" applies to certain meetings held by the Wisconsin Employment Relations Commission (WERC).
The WERC is a three-person commission appointed by the Governor and confirmed by the state Senate for the purpose of administering subchs. I, III, IV and V of ch. 111, Stats. Secs.15.58 and 15.581, Stats. Chapter 111, Stats., and the stated subchapters therein provide generally that WERC's duties are to aid in the resolution of labor disputes.
Under subch. I, the Commission acts as a quasi-judicial body, hearing and deciding labor disputes based on written complaints and answers. Under subchs. IV and V, the Commission administers the municipal and state employment relations acts which provide for collective bargaining between public employes and public agencies. *Page 172 
Section 19.83, Stats., states that:
 Every meeting of a governmental body shall be preceded by public notice as provided in s. 19.84, and shall be held in open session. At any meeting of a governmental body, all discussion shall be held and all action of any kind, formal or informal, shall be initiated, deliberated upon and acted upon only in open session except as provided in s. 19.85.
The WERC is a "governmental body." Section 19.82 (1), Stats., provides as follows:
 "Governmental body" means a state or local agency, board, commission, committee, council, department or public body corporate and politic created by constitution, statute, ordinance, rule or order; a governmental or quasi-governmental corporation; or a formally constituted subunit of any of the foregoing, but excludes any such body or committee or subunit of such body which is formed for or meeting for the purpose of collective bargaining under subch. IV or V of ch. 111.
"Meeting" is defined in sec. 19.82 (2), Stats., as follows:
 "Meeting" means the convening of members of a governmental body for the purpose of exercising the responsibilities, authority, power or duties delegated to or vested in the body. If one-half or more of the members of a governmental body are present, the meeting is rebuttably presumed to be for the purpose of exercising the responsibilities, authority, power or duties delegated to or vested in the body. The term does not include any social or chance gathering or conference which is not intended to avoid this subchapter.
Subchapter IV, ch. 19, Stats. (1975), replaced sec. 66.77, Stats. (1973), applicable to open meetings of governmental bodies. Subchapter IV, ch. 19, Stats. (1975), made a significant change for purposes of this opinion. That is, the statutes require notice of both open meetings of governmental bodies and contemplated closed sessions thereof. Closed sessions are also to be convened only upon proper announcement and vote of the governmental body. Secs. 19.83, 19.84 and 19.85, Stats. *Page 173 
You state:
 In respect to the commission's exercise of its quasi-judicial function, frequently one of the commissioners is assigned to do an in-depth study of the transcript of the hearing, to research the law, and to prepare a proposed decision affirming, reversing or modifying the examiner's findings of fact, conclusions of law and order. In the course of his study the commissioner often wishes to try out an idea about the case with another commissioner, or the other commissioner, knowing about the case, may ask how the case looks and the researching commissioner may respond with his general impressions or tentative thoughts at that stage of his research subject, of course, to his further study and review. This level of discourse generally is at one of two levels: (a) "brainstorming," or simply student-like inquiry into another's opinion as to the applicable law; and (b) deliberating on the correct result in the case for the purpose of helping the researching commissioner to think out his position prior to the meeting at which he will present his recommendation and its reasons for thorough commission discussion, deliberation and action. The commission poses these questions:
 1. Is either such brainstorming or preliminary deliberation a meeting?
 2. If a commissioner asks the researching commissioner his thoughts on the case, has there been a meeting? Is there a meeting if the question is answered?
The general state policy underlying the open meetings law is to insure the public "the fullest and most complete information regarding the affairs of government as is compatible with the conduct of governmental business." Sec. 19.81 (1), Stats. Such general legislative declaration provides some assistance in applying the specific provisions of the law.
Conversations of individual commissioners concerning business of your agency may be in terms so non-specific, incidental or peripheral or otherwise so removed from the crucial decision/policy-making functions delegated to or vested in the Commission as to require the conclusion that such conferences do not reasonably fall within the intent of the law. As was recognized by our court in State ex rel. Lynch v. Conta,71 Wis.2d 662, 683-684, 239 N.W.2d 313 (1976), *Page 174 
which interpreted exemption language in sec. 66.77, Stats. (1973), similar to that emphasized in sec. 19.82 (2), Stats., above:
 Reading this language with the preceding statements that the public is entitled to the fullest information "as is compatible with the conduct of governmental affairs and the transaction of governmental business," the drafters acknowledged that members of government organizations frequently interact and socialize with their fellow workers. Comment, 45 Miss. L. J. 1151, 1167-1170 (1974). Conversations on actual or potential government business are bound to occur. To declare that such discussions must proceed only after public notice and in a publicly accessible place would be not only impossible of enforcement but ludicrous if attempted. A serious question of deprivation of privacy would also be potential.
The clear intent of the law is to distinguish between informal and occasional "brainstorming" which are not "meetings" and discussions which actually lead to a conclusion which are "meetings." Discussions in such depth, detail, or scope as to render the later formal meeting a charade with a pre-determined outcome are prohibited. The words "intended to avoid this subchapter" are to be given some meaning in interpreting the law as they were in Conta.
In this regard, Conta is again helpful in interpreting subch. IV, ch. 19, Stats., as it applies to such activities of the WERC.
 The revision of our open meeting law when forfeiture was added as a sanction also included the addition of conferences "designed to evade the law." The establishment that such occurred, for prosecution purposes, is obviously a question of fact. Circumstances themselves, however, may dictate that evasion is being designed. If every member of a governmental body is present at a conference and any of the broad activity that composes governmental activity as defined in sec. 66.77 (3), Stats., is undertaken, a question of evasion is posed; the members are exposing themselves to the jeopardy of a prosecution. A chance gathering would not justify governmental activity being intentionally conducted, unless an emergency or other difficulties (other than that engendered by open session compliance) made such action necessary. A planned conference of the whole offers no such exigent excuse. I likewise, when a majority and *Page 175 
thus a quorum gather, it is a rare occasion which can justify any action without open session compliance and therefore not be considered an evasion of the law. Quorum gatherings should be presumed to be in violation of the law, due to a quorum's ability to thereafter call, compose and control by vote a formal meeting of a governmental body.
. . . .
 When the members of a governmental body gather in sufficient numbers to compose a quorum, and then intentionally expose themselves to the decision-making process on business of their parent body — by the receipt of evidence, advisory testimony, and the views of each other — an evasion of the law is evidenced. Some occurrence at the session may forge an open or silent agreement. When the whole competent body convenes, this persuasive matter may or may not be presented in its entirety to the public. Yet that persuasive occurrence may compel an automatic decision through the votes of the conference participants. The likelihood that the public and those members of the governmental body excluded from the private conference may never be exposed to the actual controlling rationale of a government decision thus defines such private quorum conferences as normally an evasion of the law. The possibility that a decision could be influenced dictates that compliance with the law be met.
(71 Wis.2d 685-686; emphasis added.)
In my opinion, the circumstances you have generally described in reference to your first and second questions could fit the definition of the term "meeting," in sec. 19.82 (2), Stats., in some instances and not in others. The determination depends on the nature, scope, and details of the matters discussed as well as the intent of the Commissioners. Discussions or brainstorming of a tentative nature preliminary to focusing on a specific outcome and which are not intended to evade the law are, in my opinion, not covered by the law. While this test may be difficult to apply in practice, it is suggested by the law itself, and is not unlike the various tests which are applied by the courts to determine, for example, whether police suspicion has so focused on a suspect that he need be given Miranda warnings or whether there is probable cause to believe that evidence may be found *Page 176 
in a particular place or on a particular person. The general standard can be stated; the specific application turns on the facts. Here a court would look to the intent of the Commissioners and the actual nature and detail of the discussions as the court did in Conta with the burden, because a quorum is rebuttably presumed to constitute a meeting, resting with the Commissioners to show lack of intent to evade the law and lack of a final action or determination. The character of later debate and discussion is certainly an item of circumstantial evidence which would be considered by a court in reviewing your actions. Meetings require notice under secs. 19.83, 19.84 and 19.85, Stats., although such meetings could be further convened in closed session, under one or more exemptions, including sec.19.85 (1)(a), Stats., as amended by ch. 260, Laws of 1977, which permits closed sessions for "Deliberating concerning a case which was the subject of any judicial or quasi-judicial trial or hearing before that governmental body."
You state:
 In respect to the commission's exercise of its mediation function, it always is necessary to assign a mediator to attempt resolution of a particular dispute, and the commission seeks to assign the person who by skill and experience is best suited to gain the trust of the parties and contribute to a resolution. Further, the commissioners themselves frequently need to discuss with each other the progress of bargaining talks and whether present mediation techniques are working or whether a different approach is required. The commission poses these questions:
 3. Is all discourse between the commissioners as to which of its staff should be assigned to mediate a particular dispute a meeting?
 4. Is all discourse between commissioners as to the correct mediation techniques for resolving a particular dispute a meeting?
Most of my remarks in response to your first two questions are equally applicable here. Quite clearly, it is impossible to state categorically that "all discourse" would necessarily result in a meeting under the open meetings law. Where the Commission itself makes mediation assignments, whether the person be a staff member or *Page 177 
some other person, it exercises a statutory function within the definition of "meeting" under sec. 19.82 (2), Stats. See secs.111.11 (1) and 111.87, Stats.
Where the assignment decision is made by the chairman, discussion of the question would not involve a meeting. See
answer to questions 6 and 7, infra. Where the discussion of mediation techniques involves policy determinations which require joint consideration by the Commission, a meeting rather than a chance gathering or "conference which is not intended to avoid this subchapter" is involved and requires proper notification.
You state:
 In respect to its responsibility to respond to inquiries from the general public, the commission regularly receives telephone calls and letters from citizens concerned about matters affecting their employment. The response given may involve one commissioner consulting another to receive approval of the response he is making, as where there may be some ambiguity as to the application of commission policy. The commission poses this question:
 5. Is all discourse between commissioners as to the response to be made to a citizen inquiry a meeting?
The "conferences" you describe normally would not have the status of meetings, as defined by sec. 19.82 (2), Stats., unless the request or its response would require action by the Commission. Action by the full Commission may be particularly appropriate where the inquiry raises a policy question not previously addressed and decided so that the response necessarily requires policy development. See Conta case, supra.
You state:
 In their employer capacity the commissioners are responsible to evaluate employes. The process of forming an opinion occurs over a period of time, of course, and frequently one commissioner will pass a judgmental remark on an employe to another commissioner. This kind of remark may occur in a chance social gathering, such as during a morning coffee break; or it may occur during or after a quasi-judicial deliberation concerning a particular staff member's findings of fact, conclusions of law *Page 178 
and order; or it may occur during or after review of a particular staff member's success or lack thereof in seeking to bring about a labor settlement through mediation. In addition, the commission must hire people on occasion and, to that end, the commissioners interview applicants for employment. The questions posed are these:
 6. Is a value judgment of an employe made by one commissioner to another a meeting?
 7. Is an interview with a job applicant and the commissioners a meeting?
Individual personnel matters, as opposed to the establishment of general personnel policies, involve "administrative duties" vested in the chairman of the Commission by sec. 15.06 (4), Stats., which provides:
 CHAIRMAN; ADMINISTRATIVE DUTIES. The administrative duties of each commission shall be vested in its chairman, to be administered by him under the statutes and rules of the commission and subject to the policies established by the commission.
The evaluation of employes and the interview of applicants for employment are "administrative duties" of the chairman, though they may be delegated to the other Commission members. See 64 Op. Att'y Gen. 33, 36 (1975).
If no delegation of these administrative duties takes place, the chairman could discuss such matters with the other commissioners, individually, without such conference resulting in a meeting. But if these duties have been delegated to the other Commission members so that the Commission must consider and act on such matters jointly, a meeting requiring proper notification normally results. Such a meeting could be further convened in closed session in many instances under one or more exceptions, including sec. 19.85 (1)(b), (c) or (f), Stats.
BCL:JCM *Page 179