FRED A. RISSER, President
WILLIAM A. BABLITCH, Majority Leader State Senate
This is in response to both Senator Bablitch's December 3, 1981, request for advice, and the December 16, 1981, request for a formal opinion by the Senate Committee on Organization. The question in both requests is whether the December 2 meeting of all six members of the Senate Special Committee on Reapportionment comes within Wisconsin's Open Meetings of Governmental Bodies law.
It is my opinion that, although the members of the Committee contend they had no intent to violate the law, and, although the issues present very close questions of law, a violation probably did occur.
The open meetings law creates a strong presumption in favor of the "fullest and most complete information regarding the affairs of government as is compatible with the conduct of governmental business." Section 19.81 (4), Stats., directs that this law shall be "liberally *Page 64 
construed to achieve the purposes set forth" and that the "rule that penal statutes must be strictly construed shall be limited to the enforcement of forfeitures and shall not otherwise apply to actions brought under this subchapter or to interpretations thereof."
In considering an interpretation of this law, for the purposes of advice pursuant to sec. 19.98, Stats., or for a formal opinion, a liberal construction to effectuate the purposes of the law is required. However, when considering the same set of facts for the purpose of bringing an enforcement action pursuant to sec. 19.96, Stats., a strict construction in favor of the accused is mandated. Section 19.83, Stats., provides:
 Every meeting of a governmental body shall be preceded by public notice as provided in s. 19.84, and shall be held in open session. At any meeting of a governmental body, all discussion shall be held and all action of any kind, formal or informal, shall be initiated, deliberated upon and acted upon only in open session except as provided in s. 19.85.
1981 Senate Resolution 7[1] created the Special Committee on Reapportionment. The resolution is not very comprehensive concerning the Committee's authority, power or duties and the only words of limitation are directed to the duration of existence of the Committee.
The facts leading and pertaining to the December 2 meeting are set forth in an attachment to a joint communication to me from Senators Bablitch and Chilsen, and concurred in by all members present, dated December 9, 1981. I base this opinion solely on the facts as stated in that communication. *Page 65 
Senator Bablitch is the Senate Majority Leader and chairman of the Committee. The Senate Minority Leader, Senator Chilsen, is also a member of the Committee. For some time. two other members of the Committee were working on partisan reapportionment plans, Senator Engeleiter for the Republicans and Senator Berger for the Democrats. Senators Berger and Engeleiter were to attempt to resolve differences in their respective plans and arrive at a bipartisan plan which would then be put in bill form and submitted to the senate for its consideration. Senators Bablitch and Chilsen shared with each other their concern that Senators Berger and Engeleiter were not making progress and that the reason for this was either political or personal intransigence on the part of both senators. Senators Bablitch and Chilsen felt that a meeting would be helpful in getting Senators Berger and Engeleiter together to formulate a bipartisan plan. The December 2 meeting was convened for that purpose.
A critical issue is whether there was a meeting as defined in sec. 19.82 (2), Stats., which provides:
 "Meeting" means the convening of members of a governmental body for the purpose of exercising the responsibilities, authority, power or duties delegated to or vested in the body. If one-half or more of the members of a governmental body are present, the meeting is rebuttably presumed to be for the purpose of exercising the responsibilities, authority, power or duties delegated to or vested in the body. The term does not include any social or chance gathering or conference which is not intended to avoid this subchapter.
The submitted statement of facts states:
 There was never any intention prior to the gathering to attempt to debate any matter of policy, to reach agreement on differences, to make any decisions on any bill or part thereof, to take any votes, or to resolve substantive differences. During the course of the meeting, there was in fact no attempt to debate any matter of policy, to reach agreement or differences, to make any decisions on any bill or part thereof, to take any votes, or to resolve substantive differences. Everything was entirely preliminary in nature to the work of the Committee. *Page 66 
 One point should be made about the legislative process: individuals draft bills, Committees do not. Committees do not have "authority" to draft bills; individuals do. The "authority" of a Committee in this area is to take bills that are drafted by an individual, or individuals, and, by affirmative majority vote of the Committee, introduce them under the name of the committee. When individuals draft bills, they may be members of the same committee but they are nevertheless acting as individuals. (The putting together of substitute amendments to an already introduced bill is an entirely different matter.)
The argument that legislative committees themselves do not have the power or authority to draft legislation, and since no bill had been introduced or referred to the Committee, the Special Committee could not have met for the purpose of exercising its responsibilities, authority, power or duties, is not persuasive.
I do not consider the fact that the Committee was not considering or debating a formally introduced bill as a factor which would remove the meetings from the definition of a meeting in sec. 19.82 (2), Stats. The Legislature creates committees to perform functions that the Legislature itself does not wish to involve itself with as a body. The legislative process is not limited solely to debating and voting on bills, and includes many activities directed to the final product — legislation. Legislators act within their authority when they adopt floor plans, conduct investigations, hold caucuses, etc.
At least one Senate Rule and several Joint Rules of the Legislature currently in effect suggest that committees, and not solely individual legislators, may have legislation drafted and introduced.
Senate Rule 30 provides that the name of a committee introducing a bill shall be entered on the bill jacket. Joint Rule 51 authorizes a committee chairperson, on behalf of the committee, to make use of the Legislative Reference Bureau drafting services. Joint Rule 83 provides that during any scheduled committee work period, "the chairperson of any special committee may on behalf of that special committee and within the special committee's scope," deposit legislation for introduction. Joint Rule 84 provides that unless otherwise ordered, special committees shall continue throughout the entire session and may, pursuant to due notice. meet, conduct studies, investigation *Page 67 
and reviews, and request technical assistance from the legislative service agencies.
These rules seem to provide ample evidence that the purpose of the December 2 meeting falls within the responsibilities, authority, power or duties of the special committee.
It has been suggested that my opinion to Chairman of the Wisconsin Employment Relations Commission Slavney, 68 Op. Att'y Gen. 171 (1979), and State ex rel. Lynch v. Conta,71 Wis.2d 662, 239 N.W.2d 313 (1976), should serve as precedent that the meeting under discussion was not a meeting within the purview of sec. 19.82 (2), Stats.
The Conta decision cannot be considered as precedent for the proposition that no meeting occurred here. Conta held that a meeting held by a less than a majority of the members of a governmental body was not a meeting within the law. But the supreme court did make the following relevant statements:
 If every member of a governmental body is present at a conference and any of the broad activity that composes governmental activity as defined in sec. 66.77 (3), Stats., is undertaken, a question of evasion is posed; the members are exposing themselves to the jeopardy of a prosecution. A chance gathering would not justify governmental activity being intentionally conducted, unless an emergency or other difficulties (other than that engendered by open session compliance) made such action necessary. A planned conference of the whole offers no such exigent excuse. Likewise, when a majority and thus a quorum gather, it is a rare occasion which can justify any action without open session compliance and therefore not be considered an evasion of the law. Quorum gatherings should be presumed to be in violation of the law, due to a quorum's ability to thereafter call, compose and control by vote a formal meeting of a governmental body.
. . . .
 When the members of a governmental body gather in sufficient numbers to compose a quorum. and then intentionally expose themselves to the decision-making process on business of their parent body — by the receipt of evidence, advisory testimony, and the views of each other — an evasion of the law is *Page 68 
evidenced. Some occurrence at the session may forge an open or silent agreement. . . . The possibility that a decision could be influenced dictates that compliance with the law be met.
71 Wis.2d at 685-86.
The general question posed in the Slavney opinion related to a collegial body's exercise of its quasi-judicial function, a function which is a properly recognized exemption to the open-session requirement. That opinion dealt with a general situation wherein it was a practice among commissioners to delegate to a single commissioner the responsibility to research a question for later discussion and decision by the full body. During the course of the research, the researching commissioner might engage in "student-like" brainstorming or "thinking-out" of a position with another commissioner.
It was stated in the Slavney opinion that the "clear intent of the law is to distinguish between informal and occasional `brainstorming' which are not `meetings' and discussions which actually lead to a conclusion which are `meetings.' Discussions in such depth, detail, or scope as to render the later formal meeting a charade with a predetermined outcome are prohibited." 68 Op. Att'y Gen. at 174.
It was also recognized in that opinion that the described circumstances might constitute a "meeting" in some instances and not in others:
 "The determination depends on the nature, scope, and details of the matters discussed as well as the intent of the Commissioners. Discussions or brainstorming of a tentative nature preliminary to focusing on a specific outcome and which are not intended to evade the law are, in my opinion, not covered by the law. While this test may be difficult to apply in practice, it is suggested by the law itself, and is not unlike the various tests which are applied by the courts to determine, for example, whether police suspicion has so focused on a suspect that he need be given Miranda warnings or whether there is probable cause to believe that evidence may be found in a particular place or on a particular person. The general standard can be stated; the specific application turns on the facts. Here a court would look to the intent of the Commissioners and the actual nature and detail of the discussions as the court did in Canta *Page 69 
with the burden, because a quorum is rebuttably presumed to constitute a meeting, resting with the Commissioners to show lack of intent to evade the law and lack of a final action or determination. The character of later debate and discussion is certainly an item of circumstantial evidence which would be considered by a court in reviewing your actions."
68 Op. Att'y Gen. at 175-76.
Unlike the general question posed by the Slavney opinion, we are here dealing with a specific, detailed factual question. The facts, as presented, may be superficially similar to the WERC "brainstorming" but are, I believe, distinguishable. In this instance, there was a planned meeting at which all six members of the Committee were present. The purpose was to resolve real differences between the two members delegated the responsibility for drafting legislation. It does not matter whether those differences were derived from personal or political motivation. The resolution of those differences would undoubtedly have a direct influence on the Committee's ultimately reaching a decision. Such a meeting does not appear to be as far removed from the "crucial decision/policy making functions" as the "brainstorming" by WERC Commissioners.
Further, as mentioned above, the statutory definition of a "meeting" states that when one-half or more members convene, a "meeting" is rebuttably presumed. Thus, since all six members of the Special Committee were present on December 2, the burden rests with the Special Committee to establish that a "meeting" was not held. Although the legal issue may be a close one, the facts as presented do not, for the purposes of this opinion, appear to be strong enough to overcome the strong presumption of openness which our law favors.
It also has been suggested that by virtue of sec. 19.87 (2), Stats., and 1981 Senate Resolution 10 that there was no violation of the law. Section 19.87 (2), Stats., provides: "No provision of this subchapter which conflicts with a rule of the senate or assembly or joint rule of the legislature shall apply to a meeting conducted in compliance with such rule." 1981 Senate Resolution 10 provides:
Resolved by the senate, That.
 SECTION 1. REAPPORTIONMENT COMMITTEE; PARTISAN CAUCUSES. The members of the special committee *Page 70 
on reapportionment may, at any time, hold partisan caucuses on matters within the purview of the special committee. Such caucuses shall be exempt from the provisions of subchapter IV of chapter 19 of the statutes. It is the sense of the senate that the authorization granted by this resolution to the special committee on reapportionment is a rule of the senate within the meaning of section 19.87 (2) of the statutes.
Apparently the argument is, since each partisan faction of the committee lawfully could have met in closed session, they can meet in a combined or joint caucus. I regard this argument as one that would lead to a subterfuge of the law. 1981 Senate Resolution 10, by express language, applies only to "partisan caucuses." It contemplates separate meetings limited to committee members who are members of the same political party. The word "partisan" is a word of limitation. The resolution does not provide an exemption or exception for meetings of the committee attended by members from both political parties or for caucuses by the entire committee.
Finally, I appreciate the concern of many members of the Legislature that allowing members of the news media to attend and report meetings of the type held by the Committee on December 2 would have a chilling effect on the meeting. But this could be said of many meetings of all governmental bodies, the Legislature, county boards, city councils, town boards or committees of the same. Nevertheless, this is an inconvenience — a price if you will — of democracy where openness and accountability to the electorate is a cornerstone of our representative form of government.
BCL:WHW
[1] Resolved by the senate That:
 SECTION 1. SPECIAL COMMITTEE ON REAPPORTIONMENT: the adoption of this resolution there is created a senate special committee on reapportionment. The committee shall consist of 3 majority party senators including the committee chair and 3 minority party senators appointed as are the members of standing committees of the senate. One of the minority party members shall act as liaison with the governor. One of the committee's majority party members shall serve as the senate's delegate to the assembly s reapportionment committee. Proposals may be referred to, and reported by, the special committee on reapportionment in the same manner as senate standing committees. The special committee on reapportionment shall function until the redistricting of congressional, senate and assembly districts has been accomplished or until the final adjournment of this legislature, whichever occurs first.