IN the MATTER OF TERMINATION OF PARENTAL RIGHTS TO
SUEANN A.M.:

ANN M.M., Petitioner-Respondent-Petitioner,

v.

ROB S., Respondent-Appellant.

Supreme Court

*No. 92–0885. Oral argument April 28, 1993.—Decided June 8, 1993.*

(Also reported in 500 N.W.2d 649.)

674

■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■

For the petitioner-respondent-petitioner there were briefs by *Scott D. Metz* and *Krause, Metz & Snyder,* Appleton and oral argument by *Scott D. Metz.*

For the respondent-appellant there was a brief and oral argument by *Donald T. Lang,* assistant state public defender.

STEINMETZ, J. There are three issues presented in this case. First, whether sec. 48.42(2m), Stats.,[1] denies a father standing to appear and contest a petition to involuntarily terminate his parental rights under sec. 48.415 when his daughter was conceived as a result of the father's sexual assault of the mother, who was a child under the age of 16 at the time, contrary to sec. 948.02(2). We conclude that sec. 48.42(2m) denies such standing.

Second, whether the record in this case is sufficient to establish that the father failed to assume parental responsibility under sec. 48.415(6)(a)2, Stats. We conclude that the record is sufficient.

---

[1] Section 48.42(2m), Stats., provides as follows:

(2m)  Notice not required. Notice is not required to be given to a person who may be the father of a child conceived as a result of a sexual assault if a physician attests to his or her belief that a sexual assault has occurred.

Third, whether sec. 48.42(2m), Stats., violates the due process and equal protection provisions of the state and federal constitutions by denying a father the opportunity to contest a petition to terminate his parental rights under sec. 48.415(6)(a)2. We conclude that application of sec. 48.42(2m) to the facts of this case does not violate due process or equal protection.

On August 7, 1991, the petitioner, Ann M. M., gave birth to a daughter, SueAnn A. M. Ann was 15 years old when she gave birth to SueAnn and was 14 years old when SueAnn was conceived. The respondent, Rob S., is the biological father of SueAnn and was 21 years old at the time of SueAnn's conception.

Because Rob had sexual intercourse with Ann when she was under the age of 16, he was charged with second degree sexual assault. He pleaded no contest to this charge and was sentenced to one year in jail and probation.[2]

On August 27, 1991, Ann filed a petition to terminate Rob's parental rights and also to terminate her own parental rights. Ann believed that Rob would voluntarily relinquish his parental rights. Instead, Rob filed a motion requesting a determination of paternity under sec. 48.423, Stats., and motions to dismiss and for summary judgment requesting that the petition to terminate his parental rights be dismissed.

Pursuant to sec. 48.415(6), Stats., Ann then filed a second petition alleging that Rob's parental rights should be involuntarily terminated on the ground that Rob had failed to establish a parental relationship with or assume responsibility for SueAnn. Ann also filed a motion for summary judgment asserting that pursuant to sec. 48.42(2m), Rob did not have standing to contest

---

[2] *See infra* note 4.

the termination petition because SueAnn was conceived as a result of a sexual assault as defined in sec. 948.02(2).

The Outagamie County Circuit Court, the Honorable Dennis C. Luebke, granted Ann's motion for summary judgment, concluding that under sec. 48.42(2m), Stats., Rob S. did not have standing to contest the petition to terminate his parental rights. Accordingly, the trial court entered a written order declaring that the termination of parental rights proceedings could be conducted without Rob's participation.

The trial court then conducted a hearing on Ann's request to terminate Rob's parental rights. Following the hearing, the trial court entered findings that Rob was SueAnn's biological father, that Rob had failed to assume parental responsibility for SueAnn as defined in sec. 48.415(6)(a)2, Stats., and that termination of Rob's parental rights was appropriate and in the best interest of SueAnn and her mother. Accordingly, the trial court entered an order terminating Rob's parental rights to SueAnn.

The court of appeals reversed the trial court, concluding "that sec. 48.42(2m), Stats., is addressed only to notice and does not affect the putative father's standing to contest the alleged grounds for termination of his parental rights." *In Matter of Termination of Parental Rights to A.M.,* 170 Wis. 2d 685, 691, 489 N.W.2d 719 (Ct. App. 1992). Accordingly, the court of appeals remanded the case to the trial court, directing it to conduct a second termination proceeding where Rob would be allowed to contest Ann's allegations.

Subsequently, Ann petitioned this court for review of the court of appeals decision. We granted the petition.

To resolve the first issue, whether Rob has standing to contest Ann's petition to terminate his parental rights, we interpret sec. 48.42(2m), Stats.:

> The purpose of statutory interpretation is to ascertain and give effect to the legislature's intent. In determining legislative intent, first resort is to the language of the statute itself. If the meaning of the statute is clear on its face, this court will not look outside the statute in applying it. If the statutory language is ambiguous, this court attempts to ascertain the legislature's intent by the scope, history, context, subject matter and object of the statute. A statute is ambiguous if it is capable of being understood by reasonably well-informed persons in either two or more senses.

*In Interest of P.A.K.,* 119 Wis. 2d 871, 878–79, 350 N.W.2d 677 (1984) (citations omitted).

Section 48.42(2m), Stats., states as follows:

> **(2m)** NOTICE NOT REQUIRED. Notice is not required to be given to a person who may be the father of a child conceived as a result of a sexual assault if a physician attests to his or her belief that a sexual assault has occurred.[3]

We conclude that this language is ambiguous. As demonstrated by the conflict between the decisions of the trial court and court of appeals, sec. 48.42(2m) can reasonably be interpreted as denying a putative father

---

[3] On its face, sec. 48.42(2m), Stats., applies to sexual assault by violent act and sexual assault because the victim was legally incapable of consent. Obviously, the requirement that a physician attest to his or her belief that a sexual assault has occurred applies more particularly in cases of violent sexual assault. In this type of case, a purely statutory sexual assault, the physician requirement is relevant only to the age of the victim.

standing to contest termination of his parental rights, the trial court's reading, or it can be interpreted as merely not requiring notice of the termination proceeding, the court of appeals reading.

Accordingly, to determine the intended meaning of sec. 48.42(2m), Stats., we look to the applicable rules of statutory construction. First, "we attempt to find the common sense meaning and purpose of the words employed [in the statute]." *State ex rel. Lynch v. Conta,* 71 Wis. 2d 662, 677, 239 N.W.2d 313 (1976). Common sense indicates that sec. 48.42(2m) prohibits Rob from contesting the termination of his parental rights. If Rob had the right to appear at the hearing, he certainly had the right to notice of the hearing. The fact that he became aware of the hearing in this case was incidental and did not give him the right to participate in it.

Second, statutes must be interpreted in a way that avoids absurd or unreasonable results. *State v. Pham,* 137 Wis. 2d 31, 34, 403 N.W.2d 35 (1987). Interpreting sec. 48.42(2m), Stats., as merely relieving the duty of notice, but still giving the father an opportunity to appear at the termination hearing, leads to absurd or unreasonable results. This construction would allow the mother of a child conceived as a result of a sexual assault to terminate the father's parental rights without notice to him. Thus, even though the father has standing to contest the termination of his parental rights, he does not have the opportunity to exercise that right unless he fortuitously learns of the termination proceedings. This result could not have been the intent of the legislature in enacting this statute.

Third, construction of a statute that would result in any portion of the statute being superfluous should be avoided wherever possible. *County of Columbia v. Bylewski,* 94 Wis. 2d 153, 164, 288 N.W.2d 129 (1980). Interpreting sec. 48.42(2m), Stats., to eliminate only the need to give notice, but to still give the assailant father the right to appear at the termination hearing, would render this section superfluous. The only logical purpose of this section would be to eliminate notice to an unknown assailant. However, statute sec. 48.42(4)(b)3 already allows a petitioner to move the court for an order waiving the requirement of constructive notice where the identity of the father is unknown. Section 48.42(4)(b)3, provides as follows: "At the time the petition is filed, the petitioner may move the court for an order waiving the requirement of constructive notice to a person who, although his identity is unknown, may be the father of a nonmarital child."

In addition to the cannons of statutory construction, we look to the purpose of sec. 48.42(2m), Stats., to discern the legislature's intent. *P.A.K.,* 119 Wis. 2d at 878. Examination of sec. 48.42, which sets forth the procedure for termination of parental rights, and sec. 48.415, which sets forth the grounds for involuntary termination of parental rights, reveals the purpose of sec. 48.42(2m): to relieve sexual assault victims from having to face their assailants at termination proceedings. Sexual assault is not a ground for termination of parental rights. Section 48.415. If sexual assault was merely a ground for termination, victims of sexual assault would have to face their assailants at contested termination hearings. To avoid this confrontation, the legislature denied perpetrators of sexual assault standing to contest termination of their parental rights.

680

Interpreting sec. 48.42(2m), Stats., to deny perpetrators of sexual assault the right to contest termination of their parental rights also comports with public policy. It promotes the policy of protecting victims of crime by assuring that victims of sexual assault will not have to face their assailants at termination of parental rights proceedings. In addition, because a child's parental rights must be terminated before he or she can be adopted, sec. 48.81, this interpretation of sec. 48.42(2m) facilitates the adoption of children born as a result of sexual assault when appropriate. For the foregoing reasons, we hold that sec. 48.42(2m), denies a father standing to appear and contest a petition to involuntarily terminate his parental rights under sec. 48.415(6)(a)2.

As to the second issue presented, we conclude that the record in this case is sufficient to establish that Rob failed to assume parental responsibility as defined in sec. 48.415(6)(a)2, Stats. The applicable statutory language reads as follows:

> **48.415  Grounds for involuntary termination of parental rights.** . . . Grounds for termination of parental rights shall be one of the following:
>
> . . . .
>
> **(6)  FAILURE TO ASSUME PARENTAL RESPONSIBILITY.** (a) Failure to assume parental responsibility may be established by a showing that a child is a nonmarital child who has not been adopted or whose parents have not subsequently intermarried under s. 767.60, that paternity was not adjudicated prior to the filing of the petition for termination of parental rights and:
>
> . . .

2. That although paternity to the child has been adjudicated under s. 48.423, the father did not establish a substantial parental relationship with the child prior to the filing of a petition for termination of parental rights although the father had reason to believe that he was the father of the child and has not assumed parental responsibility for the child.

(b) In this subsection, 'substantial parental relationship' means the acceptance and exercise of significant responsibility for the daily supervision, education, protection and care of the child. In evaluating whether the person has had a substantial parental relationship with the child, the court may consider such factors, including, but not limited to, whether the person has ever expressed concern for or interest in the support, care or well-being of the child or the mother during her pregnancy and whether the person has neglected or refused to provide care or support.

In accord with sec. 48.424, a fact-finding hearing was held to determine whether grounds existed to terminate Rob's parental rights. Grounds for termination must be proven by clear and convincing evidence. Sections 48.424(2), 48.31(1). As explained above, Rob was not allowed to appear at that hearing. Ann, through her attorney, presented evidence to the trial court.

The evidence revealed that Ann informed Rob of the pregnancy when she found out that she was pregnant. However, Rob did not offer to marry her. He did not offer any plan for either Ann or himself to keep the baby. He did not offer Ann any financial support or assistance of any kind either before or after the child was born. In fact, Rob has never even seen his child.

In addition, Ann's father attempted to contact Rob after learning of Ann's pregnancy. He called on at least

three occasions and left a message for Rob to call him on one occasion. Rob failed to return these calls. In fact, Rob failed to ever speak to Ann's father even though Rob worked at his brother's garage which is located across the street from where Ann and her father resided. Neither Rob nor any relative of Rob's ever offered any assistance to Ann's father concerning Ann · or the baby.

The evidence also revealed that since her release from the hospital, SueAnn has been residing with Ann's aunt and uncle. Rob never contacted this couple concerning SueAnn. In addition, the couple never received financial assistance for the child from Rob.

Rob argues that the record does not support by clear and convincing evidence that he failed to assume parental responsibility because the circumstances surrounding his arrest and conviction for sexual assault eliminated his opportunity and ability to do so. Rob was arrested on May 17, 1991, and charged under sec. 948.02(2), Stats., for second degree sexual assault. After his arrest, Rob was released on a bond which required that he have no contact with Ann. Rob eventually entered a no contest plea and was found guilty as charged on August 6, 1991. On September 16, 1991, he was placed on probation and ordered to serve one year in the county jail.[4]

■

We reject Rob's argument. Sections 48.415(6)(a)2 and (b), Stats., no longer require a showing that the father had the opportunity and the ability to assume

---

[4] The facts surrounding Rob's arrest, conviction, and sentencing were not established at the fact-finding hearing. Rob asserts on appeal that the above mentioned facts are correct, and Ann does not rebut his assertion. Accordingly, for purposes of this opinion, we assume that the alleged facts are true.

parental responsibility for the child. This requirement was contained in these sections prior to 1988; however, the legislature specifically removed the requirement in 1988. Act of April 23, 1988, ch. 383, sec. 15, 1987 Wis. Laws 1431, 1433.[5] Thus, the Wisconsin legislature has concluded that a person's parental rights may be terminated without proof that the person had the opportunity and ability to establish a substantial parental relationship with the child.

In addition, even though the statute does not require it, we conclude that Rob did have the opportunity and ability to assume parental responsibility for SueAnn under the facts of this case. There were innumerable ways in which Rob could have demonstrated "a full commitment to the responsibilities of parenthood" and accepted "some measure of responsibility for the child's future." *Lehr v. Robertson,* 463 U.S.

---

[5] Act of April 23, 1988, ch. 383, sec. 15, 1987 Wis. Laws 1431, 1433 states as follows:

SECTION 15. 48.415(6)(a)2 and (b) of the statutes are amended to read:

48.415(6)(a)2. That although paternity to the child has been adjudicated under s. 48.423, the father did not establish a substantial parental relationship with the child prior to the adjudication of paternity although the father had reason to believe that he was the father of the child and had an opportunity to establish a substantial parental relationship with has never assumed parental responsibility for the child.

(b) In this subsection, 'substantial parental relationship' means the acceptance and exercise of significant responsibility for the daily supervision, education, protection and care of the child. In evaluating whether the person has had a substantial parental relationship with the child, the court may consider such factors, including, but not limited to, whether the person has ever expressed concern for or interest in the support, care or well-being of the child or the mother during her pregnancy and whether the person has neglected or refused to provide care or support even though the person has the opportunity and ability to do so.

684

248, 261–62 (1983). In *In the Interest of Baby Girl K,* 113 Wis. 2d 429, 439, 335 N.W.2d 846 (1983), we held that "a parent's actions prior to a child's birth can form a sufficient basis for determining whether that parent has established a substantial parental relationship with the child." As explained above, when Ann told Rob that she was pregnant, Rob did not offer to marry her or to provide any assistance whatsoever before the child was born.

Moreover, after Rob was prohibited by bond conditions from contacting Ann, he still could have contacted Ann's father. He did not even have to initiate the contact. He merely could have returned the phone calls from Ann's father. While Rob was working at his brother's garage, he could have walked across the street and spoken with Ann's father.

Nothing prevented Rob from establishing a financial relationship with SueAnn. He could have agreed to pay child support or medical expenses. He could have had his brother walk across the street and drop off food, clothing, or diapers. He failed to take either of these actions.

Finally, we cannot ignore the fact that any roadblock to establishing a relationship with SueAnn caused by Rob's arrest, bond, and conviction was produced by Rob's own conduct. *See id.* at 442. Were it not for Rob's criminal conduct in sexually assaulting Ann, there would have been no prohibition against contacting her. In fact, were it not for Rob's criminal conduct, there would have been no child born which necessitated these termination proceedings.

■

As to the third issue presented, we conclude that sec. 48.42(2m), Stats., as herein construed and applied, does not violate the due process clause of the state and

685

federal constitutions. The United States Supreme Court has determined that the rights enjoyed by natural fathers of children born out of wedlock do not acquire constitutional protection under the due process clause until the unwed father establishes a significant relationship with the child. *Lehr,* 463 U.S. at 261, *cited and applied with approval in In re Paternity of C.A.S.,* 161 Wis. 2d 1015, 468 N.W.2d 719 (1991) and *In interest of Baby Girl K.,* 113 Wis. 2d 429, 335 N.W.2d 846 (1983). Specifically, the Court stated the following:

> When an unwed father demonstrates a full commitment to the responsibilities of parenthood by 'com[ing] forward to participate in the rearing of his child,' *Caban,* 441 U.S., at 392, his interest in personal contact with his child acquires substantial protection under the Due Process Clause. At that point it may be said that he 'act[s] as a father toward his children.' *Id.,* at 389, n.7. But the mere existence of a biological link does not merit equivalent constitutional protection.

*Id.* (Alteration in original.) As explained above, the testimony introduced at the termination hearing established by clear and convincing evidence that Rob had failed to assume parental responsibility for SueAnn. Rob had not established a custodial, personal, or financial relationship with SueAnn, even by telephone or mail. We stated the following in *Baby Girl K:*

> Where a father shows so little care, support or concern for the well-being of his child that his parental rights may be terminated under sec. 48.415(6)(a)2, that failure to establish a substantial parental relationship with the child means that the father's interest in contact with his child does not warrant protection under the due process clause of the constitution.

113 Wis. 2d at 447–48. Accordingly, Rob's interest in personal contact with SueAnn is not protected under the due process clause.

Even though Rob was not entitled to due process protection under the circumstances of this case, Wisconsin's termination of parental rights statutes did give him some protection. A factfinding hearing was required. Section 48.424, Stats. The petitioner, Ann, was required to prove a ground for involuntary termination, in this case "failure to assume parental responsibility," sec. 48.415(6), by clear and convincing evidence. Sections 48.424(2), 48.31(1). Finally, the trial court had the authority not to terminate Rob's parental rights despite the fact that a basis for termination had been established. Sections 48.424(4), 48.427(2).

We similarly conclude that sec. 48.42(2m), Stats., as herein construed and applied does not violate the equal protection clause of the state and federal constitutions. In *Baby Girl K.* this court stated the following: "[A]s the United States Supreme Court in *Lehr* noted, 'if the father had not "come forward to participate in the rearing of his child, nothing in the Equal Protection Clause [would] preclude [ ] the State from withholding from him the privilege of vetoing the adoption of that child." ' " 113 Wis. 2d at 450–51 (alteration in original). Accordingly, because the father in *Baby Girl K* had not assumed responsibility for his biological child, this court held that termination of his parental rights by the mother under sec. 48.415(6)(a)2, did not violate the equal protection clause. The instant case is analogous to *Baby Girl K.* Rob did not establish a relationship with SueAnn; therefore, involuntary termination of his parental rights under sec. 48.415(6)(a)2 does not violate equal protection.

687

In summary, we conclude that sec. 48.42(2m), Stats., denies the father the opportunity to appear at a hearing on a petition to terminate his parental rights where the child was conceived as a result of a sexual assault. This statute does not violate the due process or equal protection provisions of the state or federal constitutions in this case since Rob lacked a substantial relationship with his child. The record establishes by overwhelming evidence that Rob failed to assume parental responsibility for the child as defined by sec. 48.415(6)(a)2.

*By the Court.*—The decision of the court of appeals is reversed.

SHIRLEY S. ABRAHAMSON, J. *(dissenting).* I dissent for two reasons. First, I do not think the legislature intended sec. 48.42(2m), Stats. 1991–92, to apply to a fact situation such as the one presented in this case. Second, I conclude that the majority's interpretation of sec. 48.42(2m) contravenes the statutory procedure for terminating parental rights and denies the father a fair hearing, thus violating his constitutional rights to procedural due process.

I.

Under sec. 48.42(2m), Stats. 1991–92, if a physician attests to a belief that a child has been conceived as a result of a sexual assault, notice of the proceedings to terminate parental rights need not be given to the person who may be the father of the child.[1] The legislature apparently intended that a physician would have

---

[1] Section 48.42(2m) provides:

(2m)   Notice not required. Notice is not required to be given to a person who may be the father of a child conceived as a result of a

examined the woman after the assault or would have examined her medical records and would attest to his or her belief that a sexual assault occurred.

In this case the 21-year-old father of the child was convicted of having sexual intercourse with the 14-year-old mother of the child, contrary to sec. 948.02(2). The relevant facts indicating a sexual assault were that a 15-year-old gave birth to a child; conception therefore occurred before the young woman attained the age of 16. These facts could be proved without a physician. Indeed in this case no physician testified, because the circuit court properly concluded that "one does not need a physician to testify or to attest to the fact that this sexual assault took place . . . ." (R. 35:14)

Because, as the circuit court acknowledged, the physician's testimony was superfluous in this kind of case, I conclude that this statute was not intended to apply to the fact situation presented here.

## II.

The majority concedes, as it must, that when a man is adjudicated the father of a child (as Rob S. was in this case), the state grants him parental rights and imposes upon him parental responsibilities, such as child support.

The statutes require that before terminating a father's rights, a circuit court must conduct a fact-finding hearing, secs. 48.422 and 48.424, and must find that at least one of the statutorily specified grounds for termination of parental rights has been proved by clear and convincing evidence. Section 48.415, Stats. 1991–92.

sexual assault if a physician attests to his or her belief that a sexual assault has occurred.

The majority opinion concludes that grounds for termination exist in this case. On the basis of the evidence presented to the circuit court, the majority affirms the circuit court's finding that the father did not establish a substantial parental relationship with the child, a ground for terminating parental rights set forth in sec. 48.415(6). Yet the circuit court heard only from the mother and her family; the father had no opportunity to present his side of the story.

The majority concludes that sec. 48.42(2m) denies the adjudicated father any opportunity to participate in the proceedings terminating his parental rights. According to the majority opinion, the father is not entitled to notice of the proceeding and, should he somehow learn about the proceeding (as he did in this case), he cannot appear, make a statement or produce evidence on his own behalf.

The court of appeals concluded that refusing to give the father an opportunity to be heard on termination of his parental rights is inconsistent with the statutory scheme for termination of parental rights. I agree with the court of appeals.[2]

---

[2] The parties do not argue that fathering a child as a result of a sexual assault is a ground for termination of parental rights. The mother's brief in this case expressly states that she does not assert that conception as a result of a sexual assault is a ground for involuntary termination of parental rights. Petitioner's Brief, p. 10. The parties accept that the statutes require the same grounds for terminating the rights of a man who has fathered a child as a result of sexual assault as for terminating the rights of other fathers.

The statute provides a separate statutory grounds for termination of parental rights in incest cases. Section 48.415(7), Stats. 1991–92.

Further, the majority opinion violates the basic concepts of fair play which require that a person be given the opportunity to be heard before a court makes a decision affecting that person's rights. I therefore conclude that this court's upholding the termination of parental rights while denying the father an opportunity to appear and present evidence is a clear denial of procedural due process.[3]

Finally, the majority's holding that the "fathers of children born out of wedlock do not acquire constitutional protection under the due process clause until the unwed father establishes a significant relationship with the child," maj. op. at 686, puts the father in a catch-22 situation: He has no rights unless he has established a significant relationship with the child, but the court will not allow him an opportunity to introduce evidence of the relationship.

### III.

In sec. 48.42(2m) the legislature apparently was attempting to facilitate the prompt termination of a father's parental rights to free the mother of any connection with the person who assaulted her, regardless of whether the mother chooses to keep the child or seeks to place the child for adoption.

The statute presents several difficulties. One is that sec. 48.42(2m), Stats. 1991–92, does not distin-

---

[3] The father also makes an equal protection argument. The statute applies only to males, not females. An 18-year-old woman could become pregnant as a result of intercourse with a 15-year-old male. Although she may be guilty of sexual assault, she is apparently still entitled to notice of a termination of her parental rights and may appear and present evidence.

guish among various types of sexual assaults and the relationship of the parties.[4]

Another problem, as I have discussed previously, is that the statutes send conflicting signals: On the one hand, the father's parental rights are terminated without notice. On the other hand, the biological father is given parental rights that can only be terminated for specified reasons upon a court hearing.

The questions raised by this case are important to the mother, the father, the child and the public. I suggest that the legislature might want to give further consideration to the issues it sought to address in sec. 48.42(2m), Stats. 1991–92.[5]

---

[4] Many sexual assaults are committed by persons known to the victim—a date, a relative, a family friend, or a spouse. The policy considerations which resulted in the adoption of sec. 48.42(2m) may not be present in all of these fact situations.

The circuit court stated this idea as follows: "I find it difficult . . . to take (2m) as it is written to become all encompassing in such a manner that it would permit the termination of parental rights of every putative father under any circumstances where one might argue a sexual assault took place . . . . I can see a sexual assault taking place under the definitions of sexual assault in the criminal code, but involving two individuals who otherwise have a significant and long-lasting relationship, and I can't imagine the legislature would intend under that kind of situation to not provide notice to the putative father." R. 35:14–15.

[5] Two bills presently before the legislature add as a ground for involuntary termination of parental rights "parenthood as a result of a sexual assault [which] may be established by a showing that the child was conceived as a result of sexual assault in violation of s.940.225 (1), (2) or (3) or 948.02 (1) or (2) and that the person whose parental rights are sought to be terminated has been convicted of that sexual assault." 1993 Sen. Bill 77; 1993 Assembly Bill 101.

I am authorized to state that Chief Justice NATHAN S. HEFFERNAN and Justice WILLIAM A. BABLITCH join this opinion.