IN RE the PATERNITY OF MICHAEL A.T.:

DUANE N., Petitioner-Appellant,

v.

NATALIE T., Respondent-Respondent.†
[Case No. 93–2119.]

IN RE the INTEREST OF MICHAEL A.T.:

DUANE N., Respondent-Appellant,

v.

NATALIE T., Petitioner-Respondent.††
[Case No. 93–2120.]

Court of Appeals

*Nos. 93–2119, 93–2120. Submitted on briefs January 18, 1994.—Decided February 10, 1994.*

(Also reported in 513 N.W.2d 669.)

†Petition to review filed.
††Petition to review filed.

For the appellant, Duane N., the cause was submitted on the brief of *Mary A. Boehnlein* of *Jastroch & LaBarge, S.C.* of Waukesha.

For the respondent, Natalie T., the cause was submitted on the brief of *Judith Sperling Newton, Lynn J. Bodi*, and *Carol M. Gapen* of *Stafford, Rosenbaum, Rieser & Hansen* of Madison.

For Michael A.T., the cause was submitted on the brief of *Michael D. Onheiber* of Jefferson.

·For Michael A.T. in appeal, the cause was submitted on the brief of *Christopher J. Rogers* of *Smith & Rogers* of Fort Atkinson.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

GARTZKE, P.J.[1]  Duane N. appeals from orders terminating his parental rights and dismissing a petition to have him declared the father of a child born to Natalie T.[2] Duane was given no notice of the termination proceeding. While the parties discuss additional questions, the dispositive issue is whether Duane was entitled to notice of the termination proceeding. We

---

[1] We expedite this appeal under RULE 809.17, STATS. WIS. CT. APP. IOP VII (July 15, 1991).

[2] We have consolidated Duane's two separate appeals. The chief judge ordered that a three-judge panel decide the consolidated appeals.

conclude that he was. We therefore reverse both orders and remand for further proceedings.

The pertinent facts are undisputed. One evening, in the summer of 1991, Natalie and her girlfriend were at the apartment of Duane and another man. Natalie was sixteen and Duane was nineteen years old. Duane and Natalie drank beer and had sexual intercourse that night. Duane claims that their intercourse was consensual. Natalie claims that she did not consent and that he assaulted her. The following spring Natalie gave birth to a nonmarital child. About a week later she telephoned Duane. She told him that she had given birth, he was the father and she planned to put the child up for adoption. Shortly after hearing from Natalie, Duane received a letter from Lutheran Social Services regarding a proposed adoption and asking if he was willing to terminate his parental rights to the child. Duane refused to consent to a termination and said that he would raise the child if Natalie would not.

In June 1992, Natalie reported her version of the 1991 incident to the police. In July 1992, the Jefferson County Child Support Enforcement Agency filed a paternity petition on Duane's behalf. Blood tests indicate the probability of his paternity is 99.68%.

In March 1993, Natalie filed a petition to voluntarily terminate her parental rights and to involuntarily terminate Duane's rights. At the same time, her parents filed a petition to adopt the child. Natalie's petition alleges that Duane is the father, that he had sexually assaulted her, and that he has not assumed parental responsibility for the child. A parent's failure to assume that responsibility is grounds for the involuntary termination of parental rights. Section 48.415(6)(a), STATS.

On March 30, 1993, the court heard Natalie's petition. Because notice of the hearing had not been given to Duane,[3] the immediate issue was whether § 48.42(2m), STATS., made that notice unnecessary. Section 48.42(2m) provides:

> Notice [of a proceeding for the termination of parental rights] is not required to be given to a person who may be the father of a child conceived as a result of a sexual assault if a physician attests to his or her belief that a sexual assault has occurred.

A psychiatrist testified at the hearing that he believed the child's conception resulted from a sexual assault but he could not so testify to a reasonable degree of medical certainty. The psychiatrist reached that conclusion after reading the police report regarding the incident and interviewing Natalie. Natalie also testified. The court found that Natalie had voluntarily and knowingly consented to the termination of her parental rights.

The sexual assault issue regarding application of § 48.42(2m), STATS., remained unresolved. The court

---

[3] Notice is accomplished by service of the summons and petition. Section 48.42(2), STATS., provides in pertinent part:

Except as provided in sub. (2m), the petitioner shall cause the summons and petition [to terminate parental rights] to be served upon the following persons:

. . . .

(b) If the child is a nonmarital child who is not adopted or whose parents do not subsequently intermarry under s. 767.60 and paternity has not been established:

. . . .

2. A person . . . alleged to the court to be the father of the child or who may, based upon the statements of the mother or other information presented to the court, be the father of the child unless that person has waived the right to notice under s. 48.41(2)(c).

directed Natalie's guardian ad litem to interview the girlfriend who had been with her on the evening the child was conceived, to report on the best interest of the child with respect to the application of § 48.42(2m), and to report on Duane's role in initiating the paternity action, his cooperation with the agency and the purpose of the paternity action. The court continued the hearing on Natalie's petition, adjourned proceedings on the paternity action, and directed that no one reveal to Duane anything about the termination-of-parental-rights proceeding.

After the child's guardian ad litem reported on his investigation, the court concluded that it could not find from the evidence of record that the child had been conceived as a result of a sexual assault. The court directed that Duane be subpoenaed to testify at the continued hearing on Natalie's termination petition. In response to the subpoena, Duane appeared at that hearing without an attorney. After Duane was questioned by Natalie's guardian ad litem, her attorney, and the trial judge, the court released him from the subpoena and he left the courtroom, apparently not knowing the nature of the hearing.

After hearing more testimony from Natalie at the same hearing, the court found that both Natalie and Duane were credible witnesses, but it could not find that she had or had not consented to sexual intercourse with Duane. The court reasoned, however, that Duane had sexually assaulted Natalie because she was not his wife and was sixteen years old when they had intercourse, contrary to § 948.09, STATS. That statute, which is entitled "**Sexual intercourse with a child age 16 or older,**" provides: "Whoever has sexual intercourse with a child who is not the defendant's spouse and who has attained the age of 16 years is guilty of a Class A

misdemeanor." *Id*. The court concluded that because Duane had sexually assaulted Natalie, § 48.42(2m), STATS., exempted him from notice of the termination proceeding. The court found that grounds existed to terminate Duane's parental rights and that the termination was in the child's best interest. The court entered orders terminating Duane's parental rights and dismissing the paternity action, and this appeal followed. We disagree with the court's application of § 48.42(2m).

Section 48.42(2m), STATS., does not define "sexual assault." However, when the legislature used that term in § 48.42(2m), it must have intended to describe the acts prohibited by the statutes commonly referred to as "sexual assault statutes," §§ 940.225[4] and 948.02,

---

[4] Section 940.225, STATS., provides in relevant part:

**Sexual assault.**

(1) FIRST DEGREE SEXUAL ASSAULT. Whoever does any of the following is guilty of a Class B felony:

(a) Has . . . sexual intercourse with another person without consent of that person and causes pregnancy or great bodily harm to that person.

(b) Has . . . sexual intercourse with another person without consent of that person by use or threat of use of a dangerous weapon or any article used or fashioned in a manner to lead the victim reasonably to believe it to be a dangerous weapon.

(c) Is aided or abetted by one or more other persons and has . . . sexual intercourse with another person without consent of that person by use or threat of force or violence.

(2) SECOND DEGREE SEXUAL ASSAULT. Whoever does any of the following is guilty of a Class C felony:

(a) Has . . . sexual intercourse with another person without consent of that person by use or threat of force or violence.

(b) Has . . . sexual intercourse with another person without consent of that person and causes injury, illness, disease or impairment of a sexual or reproductive organ, or mental anguish requiring psychiatric care for the victim.

STATS.[5] Although § 940.225 itself does not define "sexual assault," it is known to judges and lawyers as the "sexual assault statute." For example, the supreme court noted in *State v. Penigar*, 139 Wis. 2d 569, 579, 408 N.W.2d 28, 33 (1987), that "the sexual assault statute [§ 940.225] creates several 'degrees' of sexual assault." The court concluded in *State v. Sauceda*, 168 Wis. 2d 486, 497, 485 N.W.2d 1, 5 (1992), that § 940.225 is "primarily directed at protecting one's freedom from sexual assault. Its various subsections define different methods of sexual assault." But no appellate decision

(c) Has . . . sexual intercourse with a person who suffers from a mental illness or deficiency which renders that person temporarily or permanently incapable of appraising the person's conduct, and the defendant knows of such condition.

(d) Has . . . sexual intercourse with a person who the defendant knows is unconscious.

(f) Is aided or abetted by one or more other persons and has . . . sexual intercourse with another person without the consent of that person.

(g) Is an employe of an inpatient facility or a state treatment facility and has . . . sexual intercourse with a person who is a patient or resident of the facility.

(3) THIRD DEGREE SEXUAL ASSAULT. Whoever has sexual intercourse with a person without the consent of that person is guilty of a Class D felony.

(3m) FOURTH DEGREE SEXUAL ASSAULT. Whoever has sexual contact with a person without the consent of that person is guilty of a Class A misdemeanor.

[5] Section 948.02, STATS., provides in relevant part:

**Sexual assault of a child.**

(1) FIRST DEGREE SEXUAL ASSAULT. Whoever has . . . sexual intercourse with a person who has not attained the age of 13 years is guilty of a Class B felony.

(2) SECOND DEGREE SEXUAL ASSAULT. Whoever has . . . sexual intercourse with a person who has not attained the age of 16 years is guilty of a Class C felony.

has referred to the statute the trial court relied on, § 948.09, STATS., as a sexual assault statute.

Sections 940.225 and 948.02, STATS., use the term "sexual assault" as a title and for subtitles. Although the titles and subtitles of statutes are not part of the statutes themselves, § 990.001(6), STATS., we may consider them in our search for the intention of the legislature. *Pure Milk Prods. Coop. v. National Farmers Org.*, 64 Wis. 2d 241, 253, 219 N.W.2d 564, 571 (1974). That principle is applicable here when lawyers and judges alike have used the title and subtitles to describe the statute. The title of § 948.09, STATS., does not refer to "sexual assault."

The *Sauceda* court included § 948.02, STATS., in its general discussion of "the criminal offenses of sexually assaulting a minor and sexually assaulting a person incapable of communicating consent to the sexual contact or intercourse . . . ." *Sauceda*, 168 Wis. 2d at 497-98, 485 N.W.2d at 6. The court did not, however, include § 948.09, STATS., in that discussion.

Our conclusion that "sexual assault" in § 48.42(2m), STATS., means the acts prohibited by §§ 940.225 and 948.02, STATS., is buttressed by references to those statutes in other statutes for "legal definitions" of sexual assault. For example, § 36.11(22), STATS., pertaining to the duties of the Board of Regents of the University of Wisconsin, provides in relevant part:

ORIENTATION PROGRAM; INFORMATION ON SEXUAL ASSAULT AND SEXUAL HARASSMENT.

(a) The board shall direct each institution and center to:

> 1.  Incorporate in its orientation program for newly entering students oral and written information on sexual assault . . . including information on sexual assault by acquaintances of the victims and on all of the following:
>
> a.  The legal definitions of, and penalties for, sexual assault under ss. 940.225 and 948.02 . . . .

Section 38.12(11), STATS., contains a virtually identical provision applicable to the district board of a vocational, technical, and adult education school. Thus, not only the courts but the legislature itself has referred to §§ 940.225 and 948.02, STATS., as sexual assault statutes. Furthermore, neither § 36.11(22) nor § 38.12(11) refer to § 948.09, STATS., for a definition of sexual assault.

We reject Natalie's argument based on *In re Sue-Ann A.M.*, 176 Wis. 2d 673, 680, 500 N.W.2d 649, 653 (1993). The *SueAnn* court concluded that the purpose of § 48.42(2m), STATS., is to relieve a sexual assault victim from having to face her assailant again at a parental termination proceeding. *SueAnn*, 176 Wis. 2d at 680, 500 N.W.2d at 653. Natalie contends that this purpose is best met by construing "sexual assault" in § 48.42(2m) to include all criminal sexual intercourse. That construction would make § 48.42(2m) include "sexual intercourse in public," § 944.15, STATS., and adultery, § 944.16, STATS. Such a construction would be absurd on its face.

Counsel for Natalie suggests that because of language in *Loveridge v. Chartier*, 161 Wis. 2d 150, 174 n.8, 468 N.W.2d 146, 153 n.8 (1991), "sexual assault" in § 48.42(2m), STATS., is not limited to violations of §§ 940.225 and 948.02, STATS. Chartier, an adult, had

consensual sexual contact with seventeen-year-old Loveridge. The court noted that Loveridge's consent made "sexual contact with her a misdemeanor instead of a felony sexual assault." *Loveridge*, 161 Wis. 2d at 174 n.8, 468 N.W.2d at 153 n.8. Although the misdemeanor reference must be to § 948.09, STATS., because that statute does not use the term "sexual assault," we fail to see how it relates to sexual assault for purposes of § 48.42(2m). Nor does *J.L.H. v. L.H.*, 149 Wis. 2d 349, 441 N.W.2d 273 (Ct. App. 1989), support counsel's argument that we should give "sexual assault" a generic construction rather than limiting it to activity proscribed by § 940.225 or § 948.02. J.L.H. claimed exemption from the duty to support his child. He conceived the child when he was fifteen years old and the mother was an adult. He claimed that the statute in effect at the time, § 940.225(4)(a), 1979-80, created a rebuttable presumption that he was incapable of consent. We rejected his view, since the statute pertained to criminal guilt rather than civil duties. *J.L.H.*, 149 Wis. 2d at 357, 441 N.W.2d at 275. Here the meaning of § 48.42(2m), a civil statute, turns on the meaning of a term known only to the criminal law.

We conclude that the court erred when it held that Duane was not entitled to notice of Natalie's termination proceeding because he had sexually assaulted her within the meaning of § 48.42(2m), STATS. Because no showing has been made that he sexually assaulted Natalie within the meaning of §§ 940.225 or 948.02, STATS., he is entitled to notice of Natalie's petition to terminate his rights. We reverse the orders terminating his parental rights and dismissing the paternity action and remand for further proceedings.

*By the Court.*—Orders reversed and remanded for further proceedings.